Jason LOVE, Plaintiff/Respondent,

v.

HARDEE'S FOOD SYSTEMS, INC., Defendant/Appellant.

No. ED 76576.

Missouri Court of Appeals, Eastern District, Division Two.

May 2, 2000.

Todd N. Hendrickson, Hendrickson & Glover, P.C., Clayton, for respondent.

Sanford Goffstein, Lori R. Koch, St. Louis, for appellant.

KATHIANNE KNAUP CRANE, Presiding Judge.

Defendant appeals from a judgment entered on a jury verdict in plaintiff's favor for injuries plaintiff received when he slipped and fell in a puddle of water inside the restroom doorway in one of defendant's restaurants. Defendant challenges the sufficiency of the evidence to support a finding that defendant had actual or constructive notice of the water on the restroom floor. We affirm.

At about 3:15 p.m. on November 15, 1995, plaintiff, Jason Love, and his mother, Billye Ann Love, went to the Hardee's Restaurant in Arnold, Missouri, which is owned by defendant, Hardee's Food Systems, Inc. There were no other customers in the restaurant between 3:00 p.m. and 4:00 p.m., but two or three workmen were in the back doing construction. The workmen reported that they did not use the restroom and did not see anyone use the restroom. After eating his lunch, plaintiff, who was wearing rubber-soled boat shoes, went to use the restroom. He opened the restroom door, took one step in, and, upon taking his second step, slipped on water on the restroom floor. Plaintiff fell backwards, hit his head, and felt a shooting pain down his right leg. He found himself lying in an area of dirty water, which soaked his clothes. There were no barricades, warning cones, or anything else that would either restrict access to the bathroom or warn of the danger.

Plaintiff crawled up to the sink to pull himself up and made his way back to the table and told his mother that his back and leg were "hurting pretty bad." His mother reported the fall to another employee.

Plaintiff's mother went back to the men's restroom and looked at the water on the floor. She observed that the water was dirty. The restaurant supervisor came out and interviewed plaintiff and viewed the water in the restroom. The supervisor told plaintiff's mother that the restaurant manager was at home and, at trial, testified that he called the restaurant manager at home to advise him of the accident and receive instructions. The supervisor then filled out an accident report form, which reported that the accident occurred at 3:50 p.m. The supervisor testified that the water appeared to have come from someone shaking his hands after washing them. The supervisor told plaintiff he could not recall the last time the restroom had been checked. Plaintiff was taken to a hospital emergency room. As a result of his injuries, plaintiff underwent two back surgeries, missed substantial time from work, and suffered from continuing pain and limitations on his physical activities.

Defendant had a policy requiring that the restroom was to be checked and cleaned every hour by a maintenance man. The maintenance man was scheduled to work until 3:00 p.m., but normally left at 1:00 p.m. The supervisor could not recall whether the maintenance man left at 1:00 p.m. or 3:00 p.m. on November 15. The time clock activity report would show when the maintenance man clocked out, but defendant was unable to produce the time clock report for November 15.

It was also a store policy that whenever employees cleaned the tables, they would check the restroom. The restrooms were used by customers and employees. If an employee had to use the restroom, then that employee was also supposed to check the restroom. The restaurant supervisor did not ask if any employees had been in the restroom; or if they had checked it in the hour prior to the accident, and did not know if the restroom was actually inspected or cleaned at 3:00 p.m.

The restaurant had shift inspection checklists on which the manager would report on the cleanliness of the restrooms and whether the floors were clean and dry. However, the checklists for November 15 were thrown away. The manager of the Arnold Hardee's testified with respect to the shift inspection checklists:

A. We pin [them] up on our corkboard for the day.

Q. Then what do they do with them after that?

A. Throw 'em away.

Q. Even if there's been an accident on that shift you throw 'em away?

A. Yes.

Q. So the only written record of when somebody went through and looked at that restroom, you pin up on the corkboard and even if there's an accident on a shift, where somebody slips and falls, you throw that away?

A. Yes. I mean if it happened just before an accident we would save it, but I mean the checklist, we only do like three, four times a day at the most.

Plaintiff subsequently filed the underlying lawsuit against defendant to recover damages for negligence. The jury returned a verdict in plaintiff's favor in the amount of $125,000. The trial court denied defendant's motion for judgment notwithstanding the verdict and entered judgment on the verdict.

■ For its sole point on appeal, defendant contends that the trial court erred in denying its motions for directed verdict and its motion for judgment notwithstanding the verdict. It argues that plaintiff failed to make a submissible case of negligence because plaintiff failed to prove that defendant had actual or constructive notice of the water on the restroom floor in that there was no evidence showing the source of the water or the length of time the water had been on the floor.

■ A motion for a directed verdict at the close of all the evidence and a motion for judgment notwithstanding the verdict present the same issue: whether plaintiff

made a submissible case. *Kimbrough v. J.R.J. Real Estate Invs., Inc.*, 932 S.W.2d 888, 889 (Mo.App.1996). To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. *Id.*

"Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Hurlock v. Park Lane Medical Ctr., Inc.*, 709 S.W.2d 872, 880 (Mo.App.1985). Whether evidence in a case is substantial and whether inferences drawn are reasonable are questions of law. *Id.* In determining whether a plaintiff has made a submissible case, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. *Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App.1997). We presume that plaintiff's evidence is true. *Id.* We disregard any of defendant's evidence which does not support plaintiff's case. *Id.* We will not overturn a jury verdict unless there is a complete absence of probative facts to support it. *Kimbrough*, 932 S.W.2d at 889. However, we do not supply missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences. *Id.* The evidence and inferences must establish every element and not leave any issue to speculation. *Id.*

In order to have made a submissible case, plaintiff had to show that defendant knew or, by using ordinary care, could have known of the dangerous condition and failed to use ordinary care to remove it, barricade it, or warn of it, and plaintiff sustained damage as a direct result of such failure. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 443–44 (Mo. banc 1998).

"In order to establish constructive notice, the condition must have existed for a sufficient length of time or the facts must be such that the defendant should have reasonably known of its presence." *Elmore v. Wal–Mart Stores, Inc.*, 812 S.W.2d 178, 180 (Mo.App.1991). Cases prior to the Missouri Supreme Court's decisions in *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778, 781 (Mo. banc 1989) and *Moss v. National Super Mkts., Inc.*, 781 S.W.2d 784 (Mo. banc 1989) placed great emphasis on the length of time the dangerous condition had been present and held that times of 20 or 30 minutes, absent proof of other circumstances, were insufficient to establish constructive notice as a matter of law. *See Grant v. National Super Mkts., Inc.*, 611 S.W.2d 357, 359 (Mo.App.1980); *Carraway v. National Super Mkts., Inc.*, 741 S.W.2d 895, 896 (Mo.App.1987).

In *Sheil* the Missouri Supreme Court held that, in self-service type stores, store owners could reasonably foresee that customers, who are invited to handle merchandise, could spill or drop merchandise on the floor and thereby create a dangerous condition for other customers. *Sheil*, 781 S.W.2d at 780–81. Accordingly, the storeowner "must anticipate and must exercise due care to guard against dangers from articles left in the aisle." *Id.* at 780. The court held that the precise time that the condition existed would no longer be so important a factor, but more important would be the method of merchandising and the nature of the article causing the injury. *Id.* It quoted with approval *Ciminski v. Finn Corp.*, 13 Wash.App. 815, 537 P.2d 850, 853 (1975), which we also quote in part, as follows:

It is common knowledge that the modern merchandising method of self-service poses a considerably different situation than the older method of individual clerk assistance. It is much more likely that items for sale and other foreign substances will fall to the floor. Clerks replenish supplies by carrying them through the area the customer is required to traverse when selecting items. Customers are naturally not as careful in handling the merchandise as clerks would be. They may pick up and put back several items before ultimately selecting one. Not unreasonably they are concentrating on the items displayed,

which are usually arranged specifically to attract their attention. Such conditions are equally typical of self-service restaurants and the most common self-service operation, the modern supermarket.

An owner of a self-service operation has actual notice of these problems. In choosing a self-service method of providing items, he is charged with the knowledge of the foreseeable risks inherent in such a mode of operation.

*Id.* at 781. The court in *Sheil* also noted that when a customer slips and falls the store is able to make an immediate investigation, interview witnesses, and diagram the scene. *Sheil*, 781 S.W.2d at 782. "Relative availability of evidence to the parties is a circumstance to be considered in determining what should be required for making a submissible case." *Id.*

■■■ In *Moss*, plaintiff slipped and fell on a green liquid on the store's parking lot. In contrast to *Sheil*, the accident did not occur inside a self-service store, but rather in a parking lot owned by the store and there was no showing that the slippery substance which caused the fall was a type of merchandise handled by the store. However, the court held that the parking lot was an integral part of the store, maintained to attract customers, and the duties of the storeowner with regard to the parking lot are essentially the same as those that relate to the inside of the store. *Moss*, 781 S.W.2d at 785. Thus, under *Moss*, "a plaintiff could make a submissible case against the store if there was evidence that the store's method of operation could have shown that its employees had the opportunity to observe the hazard." *Head v. National Super Mkts., Inc.*, 902 S.W.2d 305, 307 (Mo.App.1995). Under *Sheil* and *Moss*, we no longer strictly adhere to the "length of time" rule for proof of constructive notice, "whether the hazard results from a product of the store or some other device or condition." *Spencer v. Kroger Co.*, 941 F.2d 699, 702 (8th Cir. 1991) (applying Missouri law). "Foresee-

able risks extend beyond a given store's products." *Id.* Thus, for example, if a store provides plastic bags for its customers' use, it is foreseeable that customers may drop those bags on the store's parking lot. *Forrest v. Schnucks Mkts., Inc.*, 791 S.W.2d 447, 450 (Mo.App.1990). The store has a duty to protect its customers from dangers created by the bags. *Id.*

Defendant's liability is predicated on the foreseeability of the risk and the reasonableness of the care taken, which is a question of fact to be determined by the totality of the circumstances, including the nature of the restaurant's business and the method of its operation. *Head*, 902 S.W.2d at 308; *Spencer*, 941 F.2d at 703.

■■■ In this case the accident took place in the restaurant's restroom which is provided for the use of employees and customers. The cause of the accident was water, which is provided in the restroom. The restaurant owner could reasonably foresee that anyone using the restroom, customers or employees, would use the tap water provided in the restroom and could spill, drop, or splash water on the floor. Accordingly, the restaurant owner was under a duty to use due care to guard against danger from water on the floor.

There was substantial evidence to support submissibility. First, there was evidence from which the jury could infer that the water came from the use of the restroom. It was on the floor of the restroom and the supervisor testified it appeared that someone had shaken water from his hands on the floor.

Next, there was evidence from which the jury could infer that, if the water was caused by a non-employee, the water was on the floor for at least 50 minutes, or longer, because there was evidence that no other customers were in the store to use the restroom after 3:00 p.m. and the workmen on the site advised that they had not used the restroom.

In addition, plaintiff adduced evidence from which the jury could have found that

defendants' employees had the opportunity to observe the hazard. The restroom was to be used by the employees and was supposed to be checked by them when they used it; employees cleaning tables were supposed to check the restroom when they cleaned the tables; and a maintenance man was supposed to check and clean the restroom every hour.

There was evidence from which the jury could have inferred that the maintenance man charged with cleaning the restroom every hour did not clean the restroom at 3:00 p.m. as scheduled on the day of the accident. There was testimony that the maintenance man usually left at 1:00 p.m. The supervisor could not recall what time the maintenance man left that day and defendant was unable to produce the time clock reports for that day which would have shown when the maintenance man clocked out. This could have created a span of 2 hours and 50 minutes during which there was no employee working at the restaurant whose primary responsibility was to clean the restroom. *See Head,* 902 S.W.2d at 308.

There was also evidence from which the jury could have inferred that the restroom was not inspected by any employee who had the responsibility to inspect it during that same time period. The supervisor testified that he could not recall the last time the restroom had been checked and did not ask any employees if they had been in the restroom or had checked it in the hour before the accident. The manager testified that the shift inspection checklists for the day had been thrown away and indicated that the checklist would only have been kept if the inspection occurred "just before" an accident. Under the applicable standard of review we presume that the evidence that the manager was not at the restaurant at the time was true and we disregard the manager's testimony that he personally inspected the restroom and found it to be dry twenty minutes before the accident.

For all of the above reasons, plaintiff adduced sufficient evidence to create a question of fact for the jury on the issue of constructive notice. The trial court did not err in denying the motions for directed verdict and judgment notwithstanding the verdict.

The judgment of the trial court is affirmed.

ROBERT G. DOWD, Jr., J. and SHERRI B. SULLIVAN, J. concur.