**Tommy COGGINS and Rita Coggins, Respondents,**

v.

**LACLEDE GAS COMPANY, Appellant.**

No. ED 77272.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 12, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2001.

Application for Transfer Denied March 20, 2001.

Jordan B. Cherrick, Jeffrey R. Fink, Paul B. Hunker, Jr., St. Louis, MO, for appellant.

Patrick J. Hagerty, Gray & Ritter, St. Louis, MO, for respondents.

ROBERT G. DOWD, Jr., Presiding Judge.

Laclede Gas Company (Laclede) appeals from the judgment awarding $4,500,000 to Tommy and Rita Coggins for the wrongful death of their son, Thomas Coggins. Laclede argues the trial court erred in (1) denying Laclede's Motion for Judgment Notwithstanding the Verdict, (2) denying Laclede's Motion for New Trial, and (3) not entering a Remittitur Order. We affirm.

We view the facts in the light most favorable to the jury verdict. Laclede was the supplier of natural gas to the Coggineses' home in St. Louis City. On April 7, 1991, their house exploded due to a natural gas leak. Tommy and Rita Coggins were not at home, but their only son Thomas [1] was. Thomas was severely burned all over his body and he was taken to the hospital. He survived for eighty days and then died. Thomas was twenty years old.

At trial, Tommy and Rita Coggins presented evidence on two theories of Laclede's negligence. They argued Laclede failed to properly flare a copper pipe when installing a gas grill and gas light and this improper installation caused the leak which led to the explosion. Alternatively, they argued Laclede failed to properly odorize its natural gas which prevented detection of the leak. The jury returned a general verdict for Tommy and Rita Coggins and awarded them $4,500,000. Of this amount, $120,000 was for their property damage and $4,380,000 was compensation for Thomas's death. This appeal follows.

In its first point, Laclede contends the trial court erred in denying its Motion for Judgment Notwithstanding the Verdict. It argues there was not substantial evidence of Laclede's failure to properly flare a copper gas line when Laclede installed a gas grill and gas light, and that there was not substantial evidence that this caused the explosion. It further argues there was not substantial evidence of Laclede's failure to properly odorize its natural gas, and not substantial evidence this caused Thomas's death.

The standard of review of a trial court's denial of a motion for judgment notwithstanding the verdict is whether the plaintiff has made a submissible case. *Brown v. Hamilton*, 956 S.W.2d 417, 419 (Mo.App. E.D.1997). In any action for negligence, the plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury. *Stanley v. City of Independence*, 995 S.W.2d 485, 487 (Mo. banc 1999). To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. *Love v. Hardee's Food Systems, Inc.*, 16 S.W.3d 739, 742 (Mo.App. E.D.2000). Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case. *Id.*

---

1. We refer to Thomas Coggins by his first name only, for ease of understanding.

Whether evidence in a case is substantial and whether inferences drawn are reasonable are questions of law. *Id.* In determining whether a plaintiff has made a submissible case, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. *Id.* We presume that plaintiff's evidence is true. *Id.* We disregard any of defendant's evidence which does not support plaintiff's case. *Id.* We will not overturn a jury verdict unless there is a complete absence of probative facts to support it. *Id.* Where reasonable minds can differ on the question before the jury, a court may not disturb the jury's verdict. *Feely v. City of St. Louis,* 898 S.W.2d 708, 709 (Mo.App. E.D.1995). We do not supply missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences. *Love,* 16 S.W.3d at 742. The evidence and inferences must establish every element and not leave any issue to speculation. *Id.* A judgment notwithstanding the verdict is a drastic action, and it should only be granted when reasonable persons could not differ on a correct disposition of the case. *Gesellschaft Fur Geratebau v. GFG America Gas Detection, Ltd.,* 967 S.W.2d 144, 146 (Mo.App. E.D. 1998).

▮ We will address each claim of negligence separately. Concerning the first theory of liability, Laclede argues there was not substantial evidence that Laclede failed to properly flare the copper gas line which caused the leak, and that there was not substantial evidence that this caused the explosion. Laclede installed the gas line at issue in 1970 while installing an outdoor gas grill and a gas light. Laclede contends that none of the witnesses could conclusively testify that Laclede failed to flare the fitting and that the unflared fitting caused the gas leak. We disagree.

▮ To make a prima facie showing of causation, plaintiff must show the defendant's negligent conduct more probably than not was the cause of the injury. *Derrick v. Norton,* 983 S.W.2d 529, 532 (Mo.

App. E.D.1998). The defendant's negligence need not be the sole cause of the plaintiff's injury, but simply a cause or a contributing cause. *Id.* Absolute certainty is not required in proving a causal connection between a negligent defendant's actions and the plaintiff's injury. *Id.* This connection can be proven by reasonable inferences from proven fact or by circumstantial evidence—direct proof is not required; the jury may infer causation from circumstances. *Id.* In the absence of compelling evidence establishing the absence of causation, the causation question is for the jury. *Id.* at 533.

We find there was substantial evidence for the jury to find that Laclede had a duty to flare the fitting when installing the pipe in that there was testimony that the standard is to flare fittings in gas lines. We also find there was substantial evidence for the jury to find that Laclede installed the gas line and breached its duty by not flaring the fitting when it installed the pipe. We further find there was circumstantial evidence for the jury to determine the unflared fitting caused the leak. The testimony of Mr. Volz, Laclede's witness, provided evidence that the unflared copper pipe was the cause of the leak. The following testimony was elicited:

[Laclede's counsel:] Mr. Volz, I'm going to ask you a question and I'm going to ask you if you formed an opinion as to where the gas was leaking from, and I don't want you to tell me where but either yes or no.

[Mr. Volz:] Okay. Well—

[Laclede's counsel:] Well, did you form an opinion?

[Mr. Volz:] *Yes, sir, I did.*

[Laclede's counsel:] And can you tell us without telling us what the opinion is what you did in your investigation that led you to come to this opinion?

[Mr. Volz:] Well, the first thing you do is the fire always burns upwards and outward so you're looking at the lowest point to find damage so that's why we

concentrated in the basement. We had fire that was in the basement. First floor is gone, ceiling, obviously, we had an explosion. So then we concentrated our efforts into the basement, and from the basement we methodically went over the possibilities of chasing the entire gas piping system from one point to another point checking each fitting, taking them apart, going to the furnace looking at the combustion chamber, checking the hot water heater, checking the combustion chamber, checking the range in the first floor. We took a look at everything that we could take a look at to see where the possibilities were and we, you know, *that's where I formed my opinion.*

[Laclede's counsel:] Okay. And I, again, I don't want to put words in your mouth if you think there are multiple possibilities tell us, or if your indication that you more strongly feel that based upon your investigation and training experience it was caused by *one particular thing.*

[Mr. Volz:] With the—well, based on my observations following the metal piping the first thing that comes into question are where the metal piping has been compromised, and most of the piping had lately been pushed down by the weight of the debris, but it only broke in a couple of places, and what you're looking for is what's the easiest thing to break. What's most likely to come apart iron pipe or some other type of pipe?

And my observation is when you look—the iron pipe, the threads were where they were compromised, were broken and pulled, and then there was a point where there was a copper pipe, a flared fitting, and this flared fitting had been pulled out. The flare bell that normally is behind the nut wasn't there. The pipe had been pulled straight out which is fairly unusual. Normally, what you would find is that if something were to tear the pipe the flare would hold that copper pipe and the copper is soft

enough to tear, but in this particular case it didn't tear, it just pulled out and that was the observation that I saw.

(Emphasis added.) We find a jury could reasonably deduce from this testimony that the unflared fitting in the pipe was described as the source of the leak. Mr. Volz explained how an unflared fitting could come apart and that this pipe fitting was not flared. We agree with the Cogginses that the pipe was not flared properly, and we find there was circumstantial evidence in the record that the unflared pipe was the cause of the gas leak in the house.

The jury could have reasonably inferred from the circumstantial evidence presented and facts proved at trial that Laclede's negligent installation of the gas line more probably than not caused or contributed to the gas explosion and death of Thomas.

■ Laclede, however, argues twenty years is too long between the time of installation and the explosion for a jury to find that the unflared fitting caused the leak. We disagree. This inference could reasonably be drawn even though the pipe was installed over twenty years prior to the injury.

In *Derrick,* this court found the faulty installation of a mirror, two years before the mirror fell and injured the plaintiff, caused the injury. *Id.* at 532–33. This court reasoned that there was no evidence that the installation of the mirror had been altered or changed by any intervening event. *Id.* This court further stated a plaintiff should not be denied the right to have her case submitted to the jury unless her own evidence discloses another occurrence which might as well have caused the injury. *Id.* In the absence of compelling evidence establishing the absence of causation, the causation question is for the jury. *Id.*

Here, there was evidence that the improperly flared fitting in the pipe installed by Laclede was faulty. There was no evidence that the installation had been al-

tered or changed by any intervening event. As fixed piping is somewhat permanent, the jury would not have to resort to conjecture or speculation to infer the negligent condition of the pipe could have existed for over twenty years prior to Thomas's injury. The jury could infer that it could have taken over twenty years for the pipe to loosen and leak.

We conclude the Cogginses made a sufficient showing of circumstantial evidence to make a submissible case, that their own evidence did not disclose another occurrence that might as well have caused the injury, and that sufficient evidence was submitted on the issue of causation to submit the Cogginses' negligence claim to the jury.

■■■ Concerning the second theory of liability, Laclede argues that the trial court erred in denying its motion for Judgment Notwithstanding the Verdict as there was not substantial evidence of Laclede's failure to properly odorize its natural gas, and not substantial evidence that this caused Thomas's death. We disagree.

■■■ Natural gas has no odor. By law, gas companies are required to put odorant in gas as a warning to their customers of a leak. A combustible gas in a transmission line or distribution line must contain a natural odorant or be odorized so that at a concentration in air of one-fifth (⅕) of the lower explosive limit, the gas is readily detectable by a person with a normal sense of smell. 4 CSR 240–40.030(12)(P)1. The Cogginses established by substantial negative evidence that the natural gas lacked odorant. A negative fact may be proved by negative evidence. *Morris v. Israel Bros., Inc.*, 510 S.W.2d 437, 441 (Mo.1974). Under certain circumstances, negative evidence, that the presence of gas was not detected by a person with an ordinary sense of smell may constitute probative evidence from which a jury can properly find a negative fact, that the gas was not sufficiently odorized.

*Boyer v. Empiregas, Inc. of Chillicothe*, 734 S.W.2d 828, 835 (Mo.App. W.D.1987).

In this case, there was substantial negative evidence for the jury to find a lack of odor in the natural gas. Gordon Whitaker, Cogginses' expert witness, testified that the natural gas might have been leaking for two to four days before the explosion. He further testified he thought the level was very high and detectable in excess of thirty hours before the explosion. Tommy and Rita Coggins testified they did not leave their residence until twenty-three hours before the explosion and testified that they knew what gas smelled like and did not smell gas before leaving. There was evidence that Thomas, the decedent, did not have any problems with his sense of smell. A reasonable person with a normal sense of smell would have left the house if gas had been smelled. There was also evidence that Thomas was last seen outside bouncing a basketball about 4:30 or 5:00 o'clock the evening before the explosion. A reasonable jury could infer he would not have gone back into the house had he smelled gas.

We find this case similar to *Morris*, 510 S.W.2d at 437. In *Morris*, the Supreme Court examined a car accident at a construction site. *Id.* There was evidence that warning lights and signs were not displayed in the construction zone. *Id.* at 439–441. These observations were made by casual observers the day of and the week before the accident. *Id.* The court found the plaintiffs had made a submissible case and there was sufficient competent substantial evidence to go to the jury on the issue of the negligence charged even in light of the contradictory evidence the construction company provided. *Id.* at 441. The construction company presented evidence of free-standing lights and signs—evidence which was corroborated by witnesses to the accident and a highway patrolmen who arrived at the scene. *Id.* at 442. The Supreme Court found the appellate court must accept as true the evidence favorable to the prevailing party,

and all reasonable inferences to be drawn therefrom, and ignore contradictory evidence. *Id.* The Supreme Court found in light of this standard there was substantial evidence of the negative fact to be proved and it was an issue for the jury to determine. *Id.* at 441.

Under this rule, we cannot declare as a matter of law that the evidence introduced by Laclede establishes compliance with the duty to odorize. The evidence as to odorization was contradicted. In this situation, the existence, adequacy, and sufficiency of odorant were issues for the jury to resolve and thus, the Cogginses made a submissible case.

We find both theories of liability submitted to the jury were supported by substantial evidence to make a submissible case. Therefore, we find the trial court did not err in denying the Motion for Judgment Notwithstanding the Verdict. Point denied.

In its second point, Laclede argues the trial court erred in denying Laclede's Motion for New Trial. We disagree.

 In the argument portion of Laclede's brief, it complains of instructional error. It claims if there is not substantial evidence to support each disjunctive submission, then the jury instruction is erroneous and a new trial is required. This point was not raised in the point relied on and the instruction is not set forth in the argument portion of the brief. Rule 84.04(e) states: "The argument shall be limited to those errors included in the 'Points Relied On.' ... If a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." Even though Laclede's point relied on is extensive, nearly one full page, it fails to mention the instructional error it later complains of in its two-page argument section. We find Laclede has failed to comply with the Rule 84.04(e). We review their point for plain error only pursuant to Rule 84.13(c). Rarely applied, the plain error

rule is reserved for situations, not raised on appeal or properly preserved, when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom. Rule 84.13(c).

Laclede complains of Instruction No. 7 which states:

Your verdict must be for plaintiffs if you believe:

First, either:

defendant failed to odorize its natural gas so that it could be detected by a person with a normal sense of smell or failed to properly flare the copper·gas line leading to the grill and gas light at the time of installation, and

Second, in any one or more of the respects submitted in paragraph first

defendant was thereby negligent, and

Third, as a direct result of such negligence Thomas Coggins died.

 Where two or more theories of liability are submitted to the jury and one of the theories of submission is found to be defective, a new trial must be granted if the jury returned a general verdict of liability. *M.C. v. Yeargin,* 11 S.W.3d 604, 611 (Mo.App. E.D.1999).

For the reasons stated in point one, we find there was substantial evidence to submit this case to the jury under both theories of liability. Point denied.

In its third point, Laclede argues the trial court erred in not entering a Remittitur Order. Laclede argues the award of $4,500,000 is excessive. We disagree.

 The trial court has broad discretion in ordering remittitur, and its decision whether or not to reduce damages will not be disturbed on appeal absent an abuse of discretion. *Botanicals on the Park, Inc. v. Microcode Corp.,* 7 S.W.3d 465, 470 (Mo.App. E.D.1999). The trial court abuses its discretion if the award is "so grossly excessive that it shocks the conscience and convinces this court that both the trial judge and the jury have abused their discretion." *Id.*

In reviewing whether a verdict is excessive, we are "limited to a consideration of the evidence which supports the verdict excluding that which disaffirms it." *Id.* There is no exact formula to determine whether a verdict for compensatory damages is excessive and, of course, each case must be considered on its own merits. *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639, 657 (Mo.App. W.D.1997). In evaluating the excessiveness of an award, the reviewing court should consider the evidence in the case and the verdict in light of the following factors: (1) loss of income, present and future, (2) medical expenses, (3) decedent's age, (4) the nature and extent of the injuries, (5) economic factors, (6) awards given and approved in comparable cases, and (7) the superior opportunity for the jury and trial court to appraise decedent's injuries and other damages. *Id.* We further note Section 537.090, RSMo 1994, indicates that in an action for wrongful death, the trier of facts may award such damages as the deceased may have maintained in an action for injuries and suffering had death not ensued. Crucial factors in the computation of consortium and companionship damages to a parent for the loss of a child or to a child for the loss of a parent must include the physical, emotional, and psychological relationship between the parent and the child. *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 176 (Mo.App. W.D. 1997). The pain suffered by the decedent between the time of injury and death is also considered in awarding damages. *Id.*

When we consider the factors set forth in *Barnett* and Section 537.090, RSMo 1994, we find the verdict was not excessive. Here, the Coggins family suffered greatly as a result of the gas explosion in their home. Tommy and Rita Coggins lost their only child Thomas. They were a close family that often went camping together. Thomas lived at home with his parents. Thomas was only twenty years old when he was severely injured in and later died from a violent explosion. After the explosion, the neighbor found Thomas in front of the house rocking in pain. Thomas had burns covering nearly his entire body. He suffered for eighty days with these burns before he died. He spent sixty-three of these days in the Barnes Hospital Burn Unit. His nerve endings were literally cooked. Many areas of his body were raw and incredibly painful. The debriding of the wounds was painful. Doctors would slice off burned skin until they got to areas that were bleeding. He was on a breathing machine, and endured sepsis, multiple organ system failure, and had to receive intravenous nutrition. He had pulmonary failure, infections, and renal failure. He had massive infections with fungus and bacteria. He had profoundly low blood pressure. He had surgeries which included having his throat slit so that a tracheotomy could be attached. Thomas served in the United States Marine Corps. Thomas was not working at the time of the accident, but it is reasonable to consider his parents may have relied on his future income as he was their only child. Further, we note, the amount of the award was less than the amount requested by the Cogginses' counsel in final argument. We do not find the award excessive.

Laclede notes that this is the largest jury verdict in Missouri for a wrongful death action. Our research reveals that in Missouri only verdicts much larger than the verdict here have been remitted on appeal.[2] Laclede has not directed us to and we have not discovered a case where an award of this size has been remitted on

---

2. *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155 (Mo.App. W.D.1997) (remittitur of $70 million dollar judgment for compensatory and punitive damages to $2.5 million compensatory and $26.5 million punitive damages); *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639 (Mo.App. W.D.1997) (trial court's remittitur of $175 million compensatory damages award to $25 million and appellate court's further remittitur to $3.5 million compensatory damages).

appeal and we find no reason to remit the award.

We find the award is not so grossly excessive that it shocks the conscience. We are not convinced that both the trial judge and the jury abused their discretion. Point denied.

For the foregoing reasons, this judgment is affirmed.

MARY RHODES RUSSELL, J., and RICHARD B. TEITELMAN, J., concur.