William P. MONTGOMERY,
Jr., Respondent,

v.

Gordon Ray WILSON, Jr., Gordon R.
Wilson, as Trustee of the Gordon R.
Wilson and Bessie I. Wilson Trust
dated June 6, 1996, Appellants.

No. WD 71398.

Missouri Court of Appeals,
Western District.

Feb. 15, 2011.

William L. Hall and Eric Roby, Independence, MO, for Appellants.

Ed Dougherty and Josue D. Hernandez, Kansas City, MO, for Respondent.

Before Division I: MARK D. PFEIFFER, Presiding Judge, and THOMAS H. NEWTON and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

This is a premises liability case predicated upon a claim of negligence. Appellant–Defendants, Gordon Ray Wilson, Sr. and Gordon Ray Wilson, Jr. (the "Wilsons"), appeal the judgment upon jury verdict entered in favor of Respondent–Plaintiff, William P. Montgomery, Jr. ("Montgomery"), in the Circuit Court of Clay County ("trial court"). The Wilsons raise three points on appeal. They argue that: (1) the trial court erred in denying the Wilsons' motion for directed verdict and motion for judgment notwithstanding the verdict because they claim Montgomery failed to present substantial evidence that an unsafe condition existed that caused his fall; (2) the trial court erred in allowing Montgomery to present evidence of the amount

billed for his medical treatment as the value of his medical treatment; and (3) the trial court erred in allowing impeachment cross-examination of the Wilsons' expert witness regarding his opinion and testimony given in a different case. Finding no error, we affirm.

## Factual and Procedural Background[1]

In the summer of 2004, the Wilsons purchased a residence located at 1001 Sunset, Excelsior Springs, Missouri (the "Property"), for the purpose of rehabilitating it to rent or sell. In March of 2005, Gordon Ray Wilson, Jr. ("Butch Wilson") hired Montgomery as a contract laborer. Although Montgomery occasionally worked at the Wilsons' other rental properties, he mainly worked on the Property from March 2005 until mid-February 2006.

On the morning of February 16, 2006, Montgomery arrived at the Property to begin work. Montgomery testified that when he arrived, he parked his vehicle on the upper driveway of the Property to unload work materials, and then he walked down to the lower driveway to access the only door to which he had a key. While walking across the lower driveway, Montgomery's feet suddenly slipped out from under him due to a white, slippery substance ("slick spot"), and he fell to the ground. Montgomery testified that he crawled to the side of the driveway and called Butch Wilson to inform him that he had just fallen and injured himself. When Butch Wilson arrived on the Property, he found Montgomery lying on the floor of the residence, which prompted him to immediately call 911 to obtain an ambulance to transport Montgomery to the hospital.

Montgomery was ultimately diagnosed with an injury to his cervical spine, requiring surgical intervention by John Gianino, M.D. ("Dr. Gianino").

Montgomery filed the present lawsuit against the Wilsons for premises liability, predicated on a theory of negligence. After Montgomery's case in chief, the Wilsons moved for a directed verdict, which was denied. After the close of evidence, the jury returned a verdict assessing 75% fault to the Wilsons and 25% fault to Montgomery and awarding Montgomery $650,000 in damages. Based on the jury's verdict, the trial court entered judgment in favor of Montgomery in the amount of $487,500, which represented the judgment of $650,000 less the comparative fault of 25% apportioned by the jury to Montgomery. The Wilsons filed a motion for judgment notwithstanding the verdict or for a new trial, which was denied.[2] This timely appeal follows.

## Point I

In their first point on appeal, the Wilsons argue that the trial court erred in denying their motion for directed verdict and motion for judgment notwithstanding the verdict because, they allege, Montgomery did not make a submissible case because he failed to present substantial evidence that an unsafe condition on the Property caused him to fall.

### Standard of Review

 The standard of review for the denial of a judgment notwithstanding the

---

1. We view the evidence and the inferences that flow from that evidence in the light most favorable to the jury's verdict. *Mengwasser v. Anthony Kempker Trucking, Inc.*, 312 S.W.3d 368, 370 n. 1 (Mo.App. W.D.2010) (citing *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 455 (Mo. banc 2006)).

2. The motion was deemed denied on August 5, 2009, because ninety days had passed since the motion was filed on May 7, 2009.

verdict is essentially the same as that for the overruling of a motion for directed verdict. *Klotz v. St. Anthony's Med. Ctr.,* 311 S.W.3d 752, 769 (Mo. banc 2010) (citing *Giddens v. Kansas City S. Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000)). To survive either a motion for directed verdict or a motion for judgment notwithstanding the verdict, the plaintiff must have made a submissible case. *Id.* A plaintiff has not made a submissible case unless each and every fact essential to liability is predicated on substantial evidence. *Id.*; *Poloski v. Wal–Mart Stores, Inc.,* 68 S.W.3d 445, 448 (Mo.App. W.D.2001). " 'Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide the case.' " *Poloski,* 68 S.W.3d at 448 (quoting *Love v. Hardee's Food Sys., Inc.,* 16 S.W.3d 739, 742 (Mo.App. E.D.2000)). "A motion for judgment notwithstanding the verdict should be sustained only when all of the evidence and the reasonable inferences to be drawn therefrom are so strong against the plaintiff's case that there is no room for reasonable minds to differ." *Id.* "Whether evidence is substantial and whether any inferences drawn are reasonable is a question of law." *Id.* at 449 (citing *Love,* 16 S.W.3d at 742). "We decide questions of law *de novo.*" *Townsend v. E. Chem. Waste Sys.,* 234 S.W.3d 452, 464 (Mo.App. W.D.2007). In making our determination as to whether the evidence was sufficient to support the jury's verdict, we view the evidence in the light most favorable to the result reached by the jury. *Klotz,* 311 S.W.3d at 769. We will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. *Id.*

### Sufficiency of the Evidence

■■ In order to make a submissible case of premises liability predicated on a theory of negligence, Montgomery was required to present substantial evidence that: (1) a dangerous condition existed on the Wilsons' premises which involved an unreasonable risk of harm; (2) the Wilsons knew or by using ordinary care should have known of the dangerous condition; (3) the Wilsons failed to use ordinary care in removing or warning of the danger; and (4) Montgomery sustained injuries as a result of the dangerous condition. *Brown v. Morgan Cnty.,* 212 S.W.3d 200, 204 (Mo. App. W.D.2007).[3] "In many cases 'a plaintiff may rely on circumstantial evidence' because he or she 'will not know exactly what happened or what caused the fall.' " *Id.* (quoting *Rycraw v. White Castle Sys., Inc.,* 28 S.W.3d 495, 499 (Mo.App. E.D. 2000)). However, evidence of causation must nonetheless be based on probative facts, not on mere speculation or conjecture. *Payne v. City of St. Joseph,* 135 S.W.3d 444, 451 (Mo.App. W.D.2004).

The Wilsons contend that Montgomery failed to make a submissible case of negligence because he failed to prove that a dangerous condition existed on the Property the day he fell, and even if there was a dangerous condition on the Property, Montgomery failed to prove that the alleged dangerous condition caused him to fall.[4] We disagree.

---

**3.** *See also* MAI 22.03 & 37.01. In other words, this case was submitted to the jury on a comparative fault basis, such that the jury was to assess a percentage of fault to the Wilsons to the extent that the jury found the Wilsons to have been at fault for failing to remove or warn of a dangerous condition on the Property that they knew or could have known of, which failure caused or directly contributed to cause damage to Montgomery.

**4.** On appeal, the Wilsons challenge only the first and fourth elements of premises liability. The Wilsons do not challenge the sufficiency

■ First, regarding the dangerous condition, Wendy Williams, Montgomery's co-worker, testified that: in early January 2006, about a month and a half before the date of Montgomery's injury, she saw the slick spot on the driveway of the Property; she saw the slick spot on repeated occasions thereafter; she specifically saw the slick spot two days *before* Montgomery's accident; and she saw the slick spot a few days *after* Montgomery's accident. Ms. Williams testified that the slick spot was still present even after vigorous cleaning. She also testified that the slippery nature of the spot was not apparent until one looked at it in detail. She testified that the condition was composed of "some kind of oily, white, gummy substance" and that it was slick.

Based on this testimony alone, Montgomery established that the dangerously slick spot existed both before and after his fall and that the slick spot was not readily apparent from merely looking at it. While this evidence does not directly establish the slick spot's presence on the day of Montgomery's fall, it provides a *reasonable inference* that the slick spot was present before, during, and after Montgomery's slip and fall. *See Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App. E.D.1997) ("Facts necessary to sustain a recovery may be proved by circumstantial evidence...."). Accordingly, the trial record reflects that Montgomery has presented substantial evidence that the dangerous slick spot existed on the Property the day he fell.

■ Next, Montgomery also presented sufficient evidence that he was injured as a result of the slick spot. Montgomery testified that the driveway was not icy on the day he slipped and fell, and that there was nothing else located on that area of the driveway, aside from the slick spot. Montgomery testified that he *slipped* (i.e. not tripped) and that he remembered the area where he slipped and fell. Moreover, Ms. Williams testified that the slick spot was located at the same place where Montgomery claimed to have slipped and fallen. This evidence, and the reasonable inferences flowing therefrom, is sufficient to establish that the slick spot, more likely than not, was the cause of Montgomery's slip and fall. *See Brown*, 212 S.W.3d at 205 ("While no one can testify as to what specifically caused Brown's fall, there was sufficient evidence presented to permit an inference that the [dangerous condition] was a contributing cause of her fall.").

Accordingly, Montgomery presented sufficient evidence to establish that a dangerous condition existed on the Property and that dangerous condition caused him to slip and fall. Point I is denied.

### Point II

Before trial, the Wilsons filed motions, pursuant to section 490.715.5,[5] asking the trial court to limit evidence concerning the value of Montgomery's medical treatment to that which was "actually paid," rather than the amount billed to Montgomery by his medical providers.[6] In re-

---

of the evidence relating to whether the Wilsons knew or by using ordinary care could have known of the dangerous condition and whether the Wilsons failed to use ordinary care in removing or warning of the dangerous condition.

**5.** Unless otherwise noted, all statutory references are to RSMo Cum.Supp.2009.

**6.** Montgomery was billed $144,221.06 for his medical treatment. There is a dispute between the parties as to how much was actually paid to Montgomery's medical providers to satisfy Montgomery's obligations to the medical providers. The Wilsons claim to have an exhibit (which was not produced as part of the record on appeal) reflecting that Medicaid paid $47,077.16 to satisfy Mont-

sponse, Montgomery submitted affidavits from his health care providers confirming that the amounts billed fairly and reasonably represented the value of the medical treatment provided to Montgomery. Montgomery also presented the deposition testimony of Dr. Gianino and Steven Simon, M.D. ("Dr. Simon") as additional evidence demonstrating that the amount billed by Montgomery's medical providers for his medical treatment was reasonable, customary, and represented the fair value of Montgomery's medical treatment. The trial court ruled that Montgomery would be permitted to present evidence of the value of his medical treatment in the amount that he was billed by his medical providers. The Wilsons preserved their objection to doing so at trial.

 The Wilsons argue that Montgomery failed to rebut the presumption in section 490.715.5(2) that the dollar amount necessary to satisfy the financial obligations to the health care providers represents the value of the medical treatment rendered. In pertinent part, section 490.715.5(2) states:

(2) In determining the value of the medical treatment rendered, there shall be a *rebuttable presumption that the dollar amount necessary to satisfy the financial obligation to the health care provider represents the value of the medical treatment rendered.* Upon motion of any party, the court may determine, outside the hearing of the jury, the value of the medical treatment rendered based

upon additional evidence, including but not limited to:

(a) The medical bills incurred by a party;

(b) The amount actually paid for medical treatment rendered to a party;

(c) The amount or estimate of the amount of medical bills not paid which such party is obligated to pay to any entity in the event of a recovery.

(Emphasis added.)

### Standard of Review

 Our review of the trial court's application of section 490.715 constitutes an interpretation of a statute, which we review *de novo*. *Berra v. Danter*, 299 S.W.3d 690, 696 (Mo.App. E.D.2009); *see also Deck v. Teasley*, 322 S.W.3d 536, 537 (Mo. banc 2010) (in interpreting the application of section 490.715 to the substantial evidence of "fair value" of medical treatment submitted to the trial court, "the trial court misapplied the law," and the Supreme Court, accordingly, reversed the trial court's ruling).

### Discussion

This issue is governed by *Deck v. Teasley*. In *Deck v. Teasley*, a motorist brought a negligence action against another motorist arising from an automobile accident. 322 S.W.3d at 537. Deck appealed a jury verdict entered in her favor, arguing that the trial court erred in limiting evidence of the value of the medical treatment she received to the amount actually paid for the treatment, rather than the

gomery's financial obligations to his medical providers. Montgomery disputes that the Wilsons' Medicaid payment exhibit is accurate. Irrespective, the Wilsons claim that Medicaid paid an amount less than $144,221.06 to Montgomery's medical providers. By accepting discounted payments from Medicaid, the Wilsons argued that Montgomery's medical providers were re-

quired to adjust or otherwise write off the remaining balances, leaving no further payment obligations upon either Montgomery or Medicaid. Hence, pursuant to section 490.715.5, the Wilsons' motions asserted that the Medicaid payments to Montgomery's health care providers represented the fair value of Montgomery's medical treatment, not the amount billed by the providers.

amount she was billed. Deck argued that her evidence was sufficient to rebut the presumption in section 490.715.5. *Id.* at 538. Deck presented three health care witnesses who testified that the amount billed to Deck for her medical treatment was fair, customary, and represented the fair value of medical treatment provided to Deck. *Id.* at 540. The trial court concluded that the presumption in section 490.715.5 was not rebutted and determined that the value of medical treatment rendered to Deck was the amount actually paid for Deck's medical treatment, together with any amount she was still obligated to pay. *Id.*

On appeal, the Missouri Supreme Court concluded that the trial court erred in failing to "limit its role to determining whether the presumption was rebutted by substantial evidence. Instead, the trial court *weighed* the competing evidence presented by both parties concerning the value of medical treatment." *Id.* at 541 (emphasis added). Accordingly, "[t]he trial court misapplied the law by refusing to admit [Deck's] evidence of the amount of Ms. Deck's medical bills" (i.e. irrespective of whether the amount paid to satisfy Deck's obligations to the medical providers was less than the face amount of the medical bills). *Id.* at 543.

In other words, our Missouri Supreme Court concluded that the trial court's role is limited to ascertaining whether substantial evidence was presented to rebut the section 490.715.5 presumption. Once substantial evidence has been presented, the presumption is rebutted, and it becomes the *jury's* role to weigh the conflicting evidence of value in arriving at its verdict.

"To decide whether a presumption is rebutted, '[t]he trial judge need only determine that the evidence introduced in rebuttal is sufficient to support a finding contrary to the presumed fact.'" *Id.* at 539–40 (quoting 2 McCormick on Evidence § 344 (Kenneth S. Broun et al. eds., 6th ed.2006)). The quantum of proof generally necessary to rebut a presumption is "substantial evidence." *Id.* at 539. Substantial evidence, in the context of presumptions, is "'evidence which, *if true*, has probative force upon the issues, i.e. evidence favoring facts which are such that reasonable men may differ as to whether it establishes them.'" *Id.* at 540. (emphasis added) (quoting *Terminal Warehouses of St. Joseph, Inc. v. Reiners*, 371 S.W.2d 311, 317 (Mo.1963)).[7] The *Deck* court concluded:

The rebuttable presumption in section 490.715.5 requires the trial court to determine if the party seeking to rebut the presumption has presented substantial evidence that the value of medical treatment rendered is an amount different from the dollar amount necessary to satisfy the financial obligations to health care providers. If such substantial evidence is proffered, the statutory presumption is rebutted. When the presumption is rebutted, the party's other evidence of value, as well as the amount necessary to satisfy the financial obligations, is admitted at trial as if no presumption exists. If the presumption is not rebutted, then the only evidence of the value of medical treatment rendered is the dollar amount necessary to

---

7. The *Deck* court removes the "weighing" of this evidentiary issue by the trial judge and, instead, effectively requires the trial court to assume that the proffered rebuttal evidence of "fair value" is to be deemed "true" and only then to determine if such "deemed true" evidence provides any probative force upon the issue of "fair value" of medical treatment. If so, the trial court is then required to permit the jury to weigh the conflicting evidence of "fair value."

satisfy the financial obligation to the health care providers.

*Deck*, 322 S.W.3d at 540.

Like the plaintiff in *Deck*, Montgomery presented billing custodian affidavits from his medical providers and expert testimony from medical doctors testifying that the medical bills issued to Montgomery were reasonable, customary, and represented the fair value of the medical treatment provided to Montgomery. Like the plaintiff in *Deck*, this evidence constituted "substantial evidence" that, if true, has probative force upon the issue of the value of the medical treatment rendered such that reasonable persons may differ as to whether it establishes the value. In light of such substantial evidence, the trial court committed no error in allowing Montgomery to present evidence of the amount of the medical bills he incurred to the jury at trial. In fact, under these circumstances and the precedent of *Deck*, it would have been error for the trial court to refuse to permit Montgomery to present his evidence of the claimed fair value of his medical treatment. As *Deck* teaches us, once Montgomery had presented substantial evidence to rebut the Wilsons' argued "actual payment" presumed value for medical treatment (pursuant to section 490.715.5), it was the jury's role—not the trial judge's role—to *weigh* the conflicting evidence.[8] Point II is denied.

## Point III

 In their final point on appeal, the Wilsons allege that the trial court erred in allowing Montgomery's counsel to cross-examine the Wilsons' expert witness, Ed-

---

8. At oral argument, the Wilsons conceded that *Deck v. Teasley*, 322 S.W.3d 536 (Mo. banc 2010), is dispositive of the issue as framed by the Wilsons in their point relied on relating to the issue of the admissibility of Montgomery's evidence of the fair value of his medical treatment. In other words, the Wilsons concede that Montgomery did, in fact, present substantial evidence of the sort mentioned in *Deck* to satisfy Montgomery's obligation necessary to rebut the presumption that the value of Montgomery's medical treatment was the amount actually paid to satisfy Montgomery's obligation to his medical providers. But, at oral argument, the Wilsons claim for the first time that their argument on appeal has now changed after *Deck v. Teasley*. At oral argument, the Wilsons seize upon the language from *Deck* stating: "When the presumption is rebutted, the party's other evidence of value, as well as the amount necessary to satisfy the financial obligations, is admitted at trial as if no presumption exists." *Deck*, 322 S.W.3d at 540. Thus, the Wilsons now argue that the trial court erroneously refused to permit them to submit their Medicaid summary exhibit reflecting the payments made by Medicaid as evidence of "the amount necessary to satisfy [Montgomery's] financial obligations." This belated argument is riddled with procedural and substantive problems. First, this argument was not raised in the Wilsons' motion for new trial or in a point relied on to this court in the Wilsons' appeal, and accordingly, this argument is not preserved for appellate review and has been abandoned. *Wade v. Clarion Mortg. Capital, Inc.*, 311 S.W.3d 373, 379 (Mo.App. W.D. 2010); *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405 (Mo.1964) ("The questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned on appeal...."). Second, in the record on appeal, the Wilsons have not even provided us the exhibit that they belatedly claim was erroneously refused admission by the trial court. Thus, the Wilsons have violated Rule 81.12(a) and have failed to provide a record that would enable us to determine the question they now raise for the first time at oral argument, and as such, we cannot review that issue. *Mills v. Loethen*, 158 S.W.3d 257, 259 (Mo.App. W.D.2005). Finally, the exhibit the Wilsons tendered for admission apparently made references that Medicaid paid Montgomery's medical bills. Thus, the exhibit in question would appear to violate the last sentence of section 490.715.5: "Notwithstanding the foregoing, no evidence of collateral sources shall be made known to the jury in presenting the evidence of the value of the medical treatment rendered."

ward Prostic, M.D. ("Dr. Prostic"), concerning his testimony in a prior lawsuit.

## Standard of Review

 " 'It is well established that the extent and scope of cross-examination in a civil action is within the discretion of the trial court and "will not be disturbed unless an abuse of discretion is clearly shown." ' " *Nelson v. Waxman*, 9 S.W.3d 601, 604 (Mo. banc 2000) (quoting *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 868–69 (Mo. banc 1993)). Upon review, "we presume the trial court's ruling is correct, and reverse only when that 'ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Sherar v. Zipper*, 98 S.W.3d 628, 632 (Mo.App. W.D. 2003) (quoting *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992)).

## Cross–Examination of Dr. Prostic

 In situations involving the cross-examination of an expert witness, parties are to be given wide latitude " 'to test qualifications, credibility, skill or knowledge, and value and accuracy of opinion.' " *Rodriguez v. Suzuki Motor*

*Corp.*, 996 S.W.2d 47, 60 (Mo. banc 1999) (quoting *Callahan*, 863 S.W.2d at 869). Furthermore, bias or prejudice of a witness is not collateral and can always be shown subject to the limitations " 'imposed by the trial judge in his sound discretion.' " *Callahan*, 863 S.W.2d at 869 (quoting *Houfburg v. Kansas City Stock Yards Co.*, 283 S.W.2d 539, 549 (Mo.1955)). "[T]he jury is entitled to know information that might affect the credibility of the witness [and] the weight to give his testimony. . . ." *Id.*

In this case, Dr. Prostic testified that it was his opinion that Montgomery's injuries and conditions to his spinal cord were not caused by the fall on the Wilsons' premises but were caused by the natural progression of Montgomery's degenerative disc disease. On cross-examination, when asked whether his expert opinion generally involved finding that *any* surgery an injured plaintiff underwent was "required by the natural progression of a pre-existing disease rather than a traumatic episode," Dr. Prostic responded in the negative. To impeach Dr. Prostic's testimony, Mr. Montgomery's counsel questioned Dr. Prostic regarding his testimony and opinions given in a previous case in which Dr. Prostic had testified.[9]

---

9. For further context of this cross-examination, Dr. Prostic admitted that he limits his medical practice to medical-legal evaluations (approximately twenty-five per week), grossing over $900,000 per year. Dr. Prostic admitted that though facts of injury may be identical, how he views a given set of facts depends on who hires him—that he looks at the facts "from the perspective of the side that hired [Prostic]." Dr. Prostic admitted that if he was hired by the plaintiff, he believes as much about what the plaintiff says as he can, but if hired by the defense, he believes as little of what the plaintiff says as he can. Dr. Prostic then admitted, without objection from the Wilsons' trial counsel, that he had testified to Montgomery's trial counsel in a previous unrelated case [in which Montgomery's trial

counsel was also the attorney for the plaintiff in the previous unrelated case] that: "I thought that's [viewing facts in the light most favorable to whomever hires him] what I was hired to do." It is Prostic's testimony from this same prior case that Montgomery's trial counsel used to impeach Prostic—hardly a "surprise" to the Wilsons' trial counsel. While material and relevant evidence may be excluded when there is a "danger of unfair surprise to the opponent when, having no reasonable ground to anticipate this development of the proof, he would be unprepared to meet it," *Stapleton v. Griewe*, 602 S.W.2d 810, 814 (Mo.App. W.D.1980), it can hardly be deemed "unfair surprise" for the Wilsons and his trial counsel to anticipate that, of the thousands of cases Dr. Prostic had reviewed

 The Wilsons contend that separate cases are, by definition, "collateral" and not admissible. We disagree. Cross-examination of a witness as to previous or unrelated cases a witness has had involvement in is permissible in the context of bias. *State v. Thomas*, 118 S.W.3d 686, 690 (Mo.App. W.D.2003); *State v. Cosby*, 976 S.W.2d 464, 469 (Mo.App. E.D.1998) (not error to permit cross-examination of testimony of witness in unrelated trial demonstrating a proclivity of the witness to testify with a certain bias). Furthermore, parties are not confined to answers elicited on cross-examination and may probe a witness's bias, prejudice, or hostility through the use of extrinsic evidence. *Mitchell v. Kardesch*, 313 S.W.3d 667, 679 (Mo. banc 2010); *State v. J.L.S.*, 259 S.W.3d 39, 45 (Mo.App. W.D.2008). If on cross-examination a witness denies that he is partial or if he denies having engaged in conduct or *made statements that would tend to show partiality*, extrinsic evidence may usually be introduced to contradict his denials. *See, e.g., State v. Day*, 339 Mo. 74, 95 S.W.2d 1183, 1185 (1936) ("A party who interrogates a witness on cross-examination as to bias and prejudice is not bound by his answer but may contradict him by other evidence.").

The trial court did not abuse its discretion in permitting the impeachment cross-examination of Dr. Prostic. Point III is denied.

### Conclusion

Montgomery presented substantial evidence regarding the elements necessary to present a submissible case of premises liability. Montgomery presented substantial evidence that his total medical bills represented the value of his medical treatment,

and testified in, Montgomery's trial counsel might endeavor to impeach Dr. Prostic with opinions Prostic had given in a prior case that

thereby rebutting the presumption under section 490.715.5 and justifying the trial court's decision to permit Montgomery to present evidence of the total amount of his medical bills to the jury. Finally, the trial court did not abuse its discretion in permitting Montgomery's trial counsel to cross-examine the Wilsons' medical expert witness regarding issues of bias and impeachment.

The judgment below is affirmed.

THOMAS H. NEWTON, Judge, and ALOK AHUJA, Judge, concur.

Montgomery's trial counsel had previously cross-examined Prostic in.