ROBERT G. DOWD, JR., Judge
This appeal arises from a lawsuit involving the parties' failed business relationship in which the plaintiffs asserted claims of a breached partnership, conversion, breach of contract and unjust enrichment. The results at trial were mixed, as is our disposition on appeal. We affirm in part and reverse in part.
The parties' relationship had an inauspicious beginning. Lowell Aughenbaugh and Tim Williams met in jail, where they discussed cars and the used car dealership Tim[1] and his wife, Mary Williams, operated from a lot in Pagedale, Missouri. The dealership was known as "Budget Motors."[2] Tim Williams had purchased the car lot property from John Taylor and was still paying him in monthly installments at the time of trial. Taylor authorized the Williamses to use his Missouri dealership license associated with that property to buy cars from dealer auctions and to operate the used car dealership on that lot. In the spring of 2012, when Aughenbaugh was released from jail, he went to work with the Williamses. Using the Taylor license, Aughenbaugh bought cars to sell from the Budget Motors lot. Aughenbaugh paid for those cars using checks drawn from a bank account opened by Mary Williams "doing business as Budget Motors." That account was funded by wire transfers from an account owned by Aughenbaugh. With the dealer license and the Budget Motors account, Aughenbaugh could purchase cars at dealer-only auctions.
Aughenbaugh believed that he and Tim Williams had an agreement under which Aughenbaugh owned the cars he bought, he set the terms for the resale of those cars from the lot and he was entitled to keep 100% of the proceeds from those sales. At some point, Aughenbaugh's friend, Kathy Bade, began going to auctions and buying cars with Aughenbaugh. Bade purchased the lot next door to the Budget Motors lot in Pagedale and a separate lot in Fredericktown, Missouri. She and Aughenbaugh began putting cars they purchased on her lots. Bade was also under the impression that she and Aughenbaugh owned those cars and that the profits from sales of those cars were entirely theirs to keep. These cars were titled to "Budget Motors," and as the self-described owners of Budget Motors, the Williamses believed that they owned the cars. They believed their agreement with Aughenbaugh entitled him to only a portion of the sale proceeds on any cars he brought to the lot.
*520 By the fall of 2013, the relationship between Aughenbaugh and Tim Williams had devolved. After Aughenbaugh and Bade were prevented from making purchases using the Budget Motors account at an auction, they met with Mary Williams. Ultimately the dispute over true ownership of the cars became apparent, and cars purchased by Aughenbaugh and Bade were impounded from the Fredericktown lot by the police on reports that they had been stolen. Tim Williams retrieved those cars from police, but never returned any of them to Aughenbaugh or Bade. Aughenbaugh and Bade claimed that other cars they had purchased and put on the other lots also "went missing." Tim Williams sold some of the cars and did not give any of the proceeds to Aughenbaugh or Bade. This lawsuit followed.
Aughenbaugh and Bade (hereafter collectively "Plaintiffs") asserted various counts in their petition against the Williamses and Taylor (hereafter collectively "Defendants"). Plaintiffs alleged they had a partnership with Defendants, and based thereon, claimed they needed a judicial accounting and dissolution of the partnership and claimed Defendants had breached their fiduciary duties and the terms of partnership agreement. Plaintiffs also asserted claims of conversion, unjust enrichment and breach of contract against Defendants, seeking to hold all of them liable for damages resulting from Tim Williams's taking of their cars and failing to repay them. The case proceeded to trial.
At the close of Plaintiffs' case, the court directed verdicts in Defendants' favor on the partnership-based counts because there was no evidence of a partnership. Taylor was also granted a directed-verdict on all of the other claims against him at that time. Thus, the only claims submitted to the jury were for breach of contract and conversion against the Williamses. The jury instructions premised Mary Williams's liability on the theory that Tim Williams was her agent and she could be liable for his acts occurring with the scope and course of that agency.[3] The jury found in favor of the Williamses on the breach of contract claims and in favor of Plaintiffs on the conversion claims. The court then determined Plaintiffs' equitable claim of unjust enrichment in favor of the Williamses. Judgment was entered accordingly. The Williamses filed a motion for new trial, which the court granted with respect only to the conversion claims against Mary Williams. This appeal and cross-appeal followed.
Tim Williams appeals from the judgment entered on the conversion verdicts against him. Plaintiffs cross-appeal from the order granting a new trial on the conversion claims against Mary Williams. Plaintiffs also appeal from the judgment entered on the directed-verdicts in favor of all Defendants on the partnership claims and on the other claims against Taylor, along with the court's judgment on the unjust enrichment claim in the Williamses' favor. We begin with Plaintiffs' appeal of the order granting Mary Williams a new trial.
Plaintiffs' Appeal - Order Granting New Trial
In the first point of their appeal, Plaintiffs contend the trial court did not have authority to grant a new trial on the ground cited in its order. We agree. The court's order for new trial was entered more than thirty days after the judgment, and therefore the trial court was only authorized *521 to order a new trial on the grounds set forth in the motion for new trial:
The jurisdiction of the trial court to order a new trial on its own initiative is restricted to a period not later than 30 days after the entry of judgment. Rule 75.01. The filing of a motion for new trial extends the jurisdiction of the court to grant a new trial for a period of 90 days after the filing of the motion. Rules 78.04 and 78.06. However, this extension of time applies only to matters and issues properly preserved and set forth in the motion for new trial. After the thirty-day period the court's jurisdiction is limited to granting relief sought by one of the parties in its after trial motions for reasons stated in that motion.
Stretch v. State Farm Mutual Automobile Insurance Co., 645 S.W.2d 729, 731 (Mo. App. E.D. 1983) (emphasis added) (internal quotation marks and case citations omitted); see also Steele v. Evenflo Company, Inc. , 147 S.W.3d 781, 786 (Mo. App. E.D. 2004). Here, the trial court's order granting a new trial was based exclusively on the lack of evidence to support the theory of apparent authority Plaintiffs submitted in Instruction 6. But that error was not alleged in the motion for new trial, which only alleged error in Instructions 10 and 24, the verdict-directors on Aughenbaugh's and Bade's conversion claims against Mary Williams respectively.
Because Plaintiffs' conversion claims against Mary Williams were premised on an agency relationship with her husband, Tim Williams, the conversion verdict-directors were modified in accordance with Missouri Approved Instruction 18.01. Thus, those instructions directed the jury to find for the plaintiff if it believed (1) the plaintiff purchased the cars with his or her money, (2) Mary Williams, or Tim Williams "acting in the course and scope of his agency" for Mary, took possession of those cars and (3) Mary thereby deprived the plaintiff of his or her right to possess them. See MAI 23.12 (Conversion); see also MAI 18.01. The MAIs require that when agency is submitted with the "scope and course of" language in a verdict-director, the court must also give an instruction defining that phrase. See MAI 18.01, Notes on Use 2. "A universally applicable definition of 'scope of agency' is not practicable," but Chapter 13 of the approved instruction provides definitions designed "to fit the most common cases" and "should serve as a guide in those areas not specifically covered." MAI 13.01, General Comment; see MAI 13.02 through MAI 13.07.
In this case, Plaintiffs chose to submit the definition of "scope and course" found in MAI 13.07(1) for cases in which agency is premised on "apparent authority." That was Instruction 6 and it was given to the jury without any objection. It provided that the acts of Tim Williams were "were within the 'scope and course of agency' " if (1) the conduct of Mary Williams "was such that an ordinarily careful person would believe" that Tim "had authority to perform such acts on behalf of" Mary and (2) Plaintiffs "reasonably relied on" Mary's conduct. It was this instruction alone that the trial court found was given in error because there was no evidence demonstrating that Aughenbaugh or Bade relied on the appearance of authority or any conduct by Mary Williams. For this reason, the trial court granted Mary Williams a new trial on the conversion claims.
As noted, the motion for new trial contained no allegation of error with respect to Instruction 6, the apparent authority theory or the evidence relating to that theory. Mary Williams's insistence on appeal-without any citation to the record-that not only were these issues raised in the motion for new trial, but throughout *522 the trial, is manifestly untrue. The motion sought a new trial on the conversion claim against Mary Williams only based on alleged error in the verdict-directors themselves, Instructions 10 and 24. The motion asserted that there was no evidence Tim and Mary Williams had an agency relationship, that the "scope and course" language in the verdict-directors was inappropriate in tort cases and that there was no evidence that Tim was subject to Mary's control. The motion relied on a case discussing agency relationships premised on the actual authority that a principal gives an agent to act on the principal's behalf and subject to her control. See Bach v. Winfield-Foley Fire Protection District , 257 S.W.3d 605, 608 (Mo. banc 2008). There was no argument whatsoever as to whether Mary Williams's liability could be premised on the alternative theory of apparent authority, which was the trial court's basis for its order for new trial.
Actual authority and apparent authority are two different theories on which an agency relationship may be based. See Shiplet v. Copeland , 450 S.W.3d 433, 443 (Mo. App. W.D. 2014). Actual authority relates to the agent's understanding of the principal's intent to give power to the agent to act on the principal's behalf. Id. Apparent authority, on the other hand, relates to a third person's understanding of the principal's intent to give power to the agent to act on the principal's behalf. Id. Thus, the argument in the motion for new trial that there was no evidence of actual authority because there was no indication that Mary Williams had the right to control her husband does not encompass the trial court's reasoning that there was no evidence of apparent authority because there was no indication that Plaintiffs relied on anything Mary said or did. While a lack of either type of authority would defeat Mary Williams's liability for the actions of Tim Williams, the trial court's authority is strictly limited after it loses control over its judgment, and it may order a new trial only for the precise reasons stated in the motion for new trial. See State ex rel. Missouri Highway and Transportation Commission v. Christie , 855 S.W.2d 380, 382 (Mo. App. W.D. 1993) (court had no authority to grant new trial on ground that exclusion of exhibit was error because it was admissible as an admission, where motion for new trial challenged exclusion of exhibit only on ground it was admissible for different reason). The court had no authority, more than thirty days after the judgment, to enter this order granting a new trial on a ground that was not set forth in the motion for new trial. As a result, that order is void.[4] See Stretch, 645 S.W.2d at 731-32.
The order granting a new trial on the conversion claims against Mary Williams must be reversed, and the judgment on the verdicts in favor of Plaintiffs and against Mary Williams on those claims is reinstated.[5] Id. at 732 ; see also *523 Steele , 147 S.W.3d at 794. This renders moot Plaintiffs' point on appeal regarding the merits of the order granting a new trial. We turn now to the other points in Plaintiffs' appeal, involving the trial court's entry of directed-verdicts.
Plaintiffs' Appeal - Judgment on Directed-Verdicts
At the close of Plaintiffs' evidence, the trial court directed verdicts in favor of all Defendants on the claims based on an alleged partnership, namely counts for judicial dissolution and accounting, breach of fiduciary duty and breach of partnership. Verdicts on all of the other claims against Taylor were also directed in his favor at that time. Plaintiffs appeal from the judgment entered on those directed-verdicts, arguing they made a submissible case on all these claims. We disagree.
Directing a verdict is a drastic measure, and appellate courts have said there is a presumption in favor of reversing the grant of a motion for directed-verdict. See, e.g., Lorimont Place, Inc. v. Jerry Lipps, Inc. , 403 S.W.3d 104, 107 (Mo. App. E.D. 2013). Nevertheless, we review a directed-verdict by determining whether the plaintiffs made a submissible case, and a case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. See Doe 1631 v. Quest Diagnostics, Inc. , 395 S.W.3d 8, 17 (Mo. banc 2013). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." Love v. Hardee's Food Systems, Inc. , 16 S.W.3d 739, 742 (Mo. App. E.D. 2000) (internal citation and quotation marks omitted). In determining submissibility, we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiffs and disregard all contrary evidence and inferences. Id. But "we do not supply missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences." Id. Whether evidence is substantial and whether inferences are reasonable are questions of law, which we review de novo. See id.
Partnership-Based Claims against all Defendants
With respect to the claims for judicial dissolution and accounting, breach of fiduciary duty and breach of partnership, Plaintiffs had the burden to prove the existence of a partnership between themselves and Defendants. See Norber v. Marcotte , 134 S.W.3d 651, 658 (Mo. App. E.D. 2004). A partnership is defined by statute as "an association of two or more persons to carry on as co-owners [of] a business for profit." See Section 358.060.1. Our courts' essential definition of a partnership is: "a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." Norber , 134 S.W.3d at 658. There must be evidence that the purported partners made "a definite and specific agreement. " Morrison v. Labor and Industrial Relations Commission , 23 S.W.3d 902, 908 (Mo. App. W.D. 2000) (emphasis in original). The intent of the parties is the primary criterion for determining whether a partnership relationship exists:
[The plaintiffs] must show-not only the intention of one of the parties to create a partnership-but must go farther and show a mutual intention and a meeting *524 of the minds of all the parties to agree to the partnership relation. Of course, a party may so conduct himself in his dealings with others as to be estopped to deny that he intended to create a partnership.
Bussinger v. Ginnever , 213 S.W.2d 230, 235 (Mo. App. 1948) (emphasis added). The parties need not intend to form a "partnership" by that name; it is sufficient if the parties intended to enter a relationship that in law constitutes a partnership. Morrison , 23 S.W.3d at 908.
The most basic and indispensable element of a partnership agreement is to share, in some way, the profits and losses of a business venture. This "community of interest" between the parties is fundamental to finding the existence of a partnership. Temm v. Temm , 354 Mo. 814, 191 S.W.2d 629, 631 (Mo. 1946) ; see also Donnell v. Harshe , 67 Mo. 170, 1877 WL 9283, at *2 (Mo. 1877) (community of interest in subject of partnership is "essential"). The parties' respective contributions must have "become as one " and "the commingled property and interests of the parties" is then subject to the partners' use for the common purpose, trusting that each will "act for their joint benefit." 68 C.J.S. Partnership § 31 (emphasis added). A mere association of persons, pooling their resources for the accomplishment of a common purpose, is not a partnership if "the individual rights, interest, and liability of each member and the control of his or her property remain distinct and severable." 68 C.J.S. Partnership § 32.
There was no evidence of the parties' mutual intention to commingle their contributions to this used car dealership and then share in the collective profits and losses of that business. Plaintiffs rely, in part, on the self-serving conclusion in Aughenbaugh's testimony that Budget Motors was a partnership and that he, Mary Williams, Tim Williams and John Taylor were the partners. This is not substantial evidence of the required elements of a partnership. See Brown v. Meyer, 580 S.W.2d 533, 535 (Mo. App. E.D. 1979) (self-serving conclusions are not substantial evidence). Plaintiffs also direct us to the following portions of Aughenbaugh's testimony to establish a partnership. Aughenbaugh said the parties' agreement was that he was entitled to 100% of the profits on the sales of any cars he had purchased and that he would, and did, pay for the "majority" of the overhead expenses at the lot. Aughenbaugh said Tim Williams repeatedly assured him he could buy a car with his money and it would remain in Aughenbaugh's control. Aughenbaugh said he was entitled to determine the sale price, the amount of down payment and the other terms and conditions of sale on the cars he had purchased. Aughenbaugh testified that Tim Williams told him Taylor and the Williamses could also "put cars on the lot," and each of them had the same arrangement Aughenbaugh had regarding keeping the profits. Aughenbaugh believed the Williamses and Taylor had an existing partnership when he arrived and that nothing about the partnership would change when he joined because they already had everything needed: an operating license, a dealer number, a location to sell cars, business cards, advertising and insurance. When asked at the conclusion of his testimony to clarify his understanding of the parties' agreement as to how profits and losses were to be shared, Aughenbaugh said:
The agreement through Tim Williams was, any of the partners could buy cars and offer them for sale with the Budget Motors lot, which Tim owned the property, and John Taylor owned the dealership license for, and any car they offered for sale would be-they would be required to-they would be responsible for *525 the losses associated with buying and selling that car, and they would be-they would be responsible for the profit, where they could realize the profit from any car they offered for sale.
To demonstrate Taylor's participation in the partnership, Plaintiffs cite evidence that Taylor financed Tim Williams's purchase of the lot, on which Tim still owed him money, and Taylor authorized the Williamses to maintain his dealer license associated with the property so that it could remain zoned for use as the dealership, which made the property "worth more" to Taylor.
None of this testimony constitutes substantial evidence that all of these purported partners mutually intended to enter an agreement to divide or share any profits and losses. Rather, Aughenbaugh's own description of the agreement evinces an arrangement under which each party was entitled to all of their individual profits on the cars he or she brought to the lot. Aughenbaugh's insistence that he alone controlled the cars he bought, that Defendants were not entitled to any control over those cars, that Defendants had no right to any portion of the profits generated from his cars and that he never provided Defendants any portion of those proceeds is completely at odds with the existence of a partnership. Even if each of these individuals contributed something to the operation of the Budget Motors lot, there were no collective profits of a partnership to be divided among them. See generally 68 C.J.S. Partnership § 145 ("Although the profits are distributable among the partners, they constitute partnership assets until they are so divided."). This was not a partnership, but a mere association of people in the used car business sharing resources-the lot, the license, the expertise-for the accomplishment of selling used cars for individual profit, but without any community of interest.
Even construed in the light most favorable to them, the evidence and reasonable inferences therefrom is so lacking that no reasonable jury could have found the existence of a partnership. Plaintiffs have failed to demonstrate that there was substantial evidence of a partnership and therefore did not make a submissible case on the claims based thereon. As such, the "drastic" remedy of directed-verdict was appropriate here.
Conversion and Contract Claims against Defendant Taylor
The conversion and breach of contract claims against Taylor premised his liability on some sort of agency relationship between Taylor and Tim Williams. On appeal, Plaintiffs contend they made a submissible case of conversion against Taylor because he authorized Tim Williams to repossess Plaintiffs' cars using his dealer license. They cite Fricke v. Valley Production Credit Association for the proposition that an individual who has knowledge of a conversion and benefits from the proceeds thereof is liable as a principal. 778 S.W.2d 829, 835 (Mo. App. E.D. 1989). Plaintiffs rely on Tim Williams's testimony that Taylor gave him authority to use the dealer license to buy car and sell cars, which included the ability to accept payment and "repossess the cars when [he] felt the business had been wronged and someone took the cars without paying for them." The fact that Tim Williams may have had authority to use Taylor's license to repossess cars from delinquent buyers does not establish, nor lead to the reasonable inference, that Taylor authorized Tim Williams to take possession of unsold cars from Plaintiffs after a dispute over who owned them. Moreover, assuming Fricke is the governing law as Plaintiffs argue, there is no substantial evidence that Taylor knew about the conversion nor benefited from it.
*526 Plaintiffs cite two unrelated lines of testimony to show Taylor benefitted from the conversion: that Tim Williams sold the cars he took from Plaintiffs, and that Tim Williams still owed Taylor money. They then speculate that Taylor benefited from the conversion because Tim "could have" used proceeds of the sales to pay Taylor. This is an unreasonable, forced and speculative inference to draw from this testimony.
Plaintiffs contend they made a submissible case of breach of contract against Taylor because Tim Williams's "broad authority" to act on Taylor's behalf included entering the alleged agreement with Aughenbaugh regarding the buying and selling of cars. They cite the proposition that "[a] disclosed principal is always liable on a contract entered into by an authorized agent where a valid contract has been entered into by an agent for his principal" as set forth in Hamilton Music, Inc. v. Gordon A. Gundaker Real Estate Company, Inc. , 666 S.W.2d 840, 845 (Mo. App. E.D. 1984). Plaintiffs point again to Tim Williams's authority to use Taylor's license to buy and sell cars and contend Tim Williams was authorized to enter into agreements corresponding to that authority. Perhaps it is reasonable to infer that the license authority extended to the agreement Tim Williams entered with the eventual buyers of those cars. But it is not reasonable to infer that such authority extended to an agreement Tim Williams may have entered with Aughenbaugh. There was no evidence that Tim Williams had authority of any kind to enter into an agreement with Aughenbaugh on Taylor's behalf.
Even construed in the light most favorable to them, the evidence and reasonable inferences therefrom is so lacking that no reasonable jury could have found any basis for holding Taylor liable on the conversion or breach of contract claims. Plaintiffs have failed to demonstrate that there was substantial evidence to support submitting those claims to the jury. As such, the "drastic" remedy of directed-verdict was appropriate here.
The judgment on the directed-verdicts in favor of Defendants must be affirmed.
Plaintiffs' Appeal-Judgments for Defendants on Unjust Enrichment
Plaintiffs' claims of unjust enrichment were equitable in nature. The court took up the unjust enrichment claim against the Williamses after the jury trial and entered judgment in the Williamses' favor. Taylor, however, had asked the court to direct a verdict on the unjust enrichment claim against him at the close of Plaintiffs' case, which the court granted. But because it was an equitable claim for the court, not the jury, to determine, there was no "verdict" to direct on that claim. Kamil, Decker & Company, P.C. v. SMC Properties, Inc. , 998 S.W.2d 818, 819 (Mo. App. E.D. 1999). Therefore, regardless of denomination, we treat Taylor's motion for a directed-verdict as submitting the unjust enrichment claim to the court for judgment on the merits. See id. As a result, we review the ruling on that unjust enrichment claim in favor of Taylor-and the judgment in the Williamses' favor on that claim-as we would any judgment in a court-tried case. See id. We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976).
We note first that neither of Plaintiffs' points properly assert error under this standard of review because neither point clearly articulates whether the challenge is based on a lack of substantial evidence, the weight of the evidence or an *527 erroneous application or declaration of law. These are the only reasons we could reverse, so it is incumbent on the appellant to specify which basis is being pursued. See, e.g., Kim v. Mercy Clinic Springfield Communities , 556 S.W.3d 613, 617 (Mo. App. S.D. 2018). Plaintiffs essentially assert that that the evidence should have persuaded the court to rule in their favor, and thus we treat these points as an argument that the judgments in Defendants' favor was against the weight of that evidence. See Day v. Hupp , 528 S.W.3d 400, 411 (Mo. App. E.D. 2017) (against-weight-of-evidence challenge looks at "how much persuasive value evidence has" to prove a fact; in other words, its probative value); see also Houston v. Crider , 317 S.W.3d 178, 186-89 (Mo. App. S.D. 2010). "The against-the-weight-of-the-evidence standard of review serves only as a check on a trial court's potential abuse of power in weighing the evidence, and we will reverse the judgment only in rare cases when we have a firm belief that the judgment is wrong." Day, 528 S.W.3d at 411-12. This is not that rare case.
The essential elements of an unjust enrichment claim are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of the benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. Pitman v. City of Columbia , 309 S.W.3d 395, 402 (Mo. App. W.D. 2010). "The last element-unjust retention of the benefit-is considered the most significant and most difficult of the elements to apply." Id. (emphasis added). "Mere receipt of benefits is not enough when there is no showing that it would be unjust for defendant to retain the benefit received. There must be something more than passive acquiescence, such as fault or undue advantage on the part of the defendant, for defendant's retention of the benefit to be unjust." S & J, Incorporated v. McLoud & Company, L.L.C. , 108 S.W.3d 765, 768 (Mo. App. S.D. 2003) (internal quotation marks and citations omitted).
As to Taylor, Plaintiffs contend the evidence showed he received benefits from Plaintiffs that he did not pay for. They rely on testimony about the various way they contributed to keeping Taylor's dealer license active and claim that maintaining that license benefited Taylor because he retained an interest in the property-in that Tim Williams still owed him money for it-and the property was "worth more to [Taylor] if it comes back after a default if there is still a dealer's license associated with it."[6] But Plaintiffs have wholly failed to demonstrate that it was unjust or inequitable for Taylor to retain that supposed benefit without paying Plaintiffs for it. For this reason, we do not have a firm belief that the judgment in Taylor's favor on this claim was wrong.
As to the Williamses, Plaintiffs argue the evidence showed they "used their own money to pay for dealership expenses, pay for an adjacent car lot for overflow inventory, and substantial funds to purchase cars to sell on the Budget Motors lot." They claim that when Tim Williams took their cars from the lots, sold them and did not give any of the proceeds to Plaintiffs, he accepted a benefit that it would be inequitable to allow him to retain. The parties' testimony was conflicting as to who owned the cars, the parties' respective *528 rights to and interest in the profits from the sale of the cars and the circumstances surrounding the taking of the cars from the lots. Each version of the events in this case leads to a different conclusion depending on whose testimony is believed. The trial court concluded that the evidence did not show the Williamses retained any benefit and that restitution for unjust enrichment was inappropriate in this case. "When the evidence poses two reasonable, although different conclusions, we must defer to the trial court's assessment of that evidence." Day, 528 S.W.3d at 412. This is simply not the rare case in which we will overturn the court's judgment as being against the weight of the evidence.
The judgments in Defendants' favor on the unjust enrichment claims must be affirmed.
Timothy Williams's Appeal
We turn now to the three points raised in Tim Williams's appeal. None of the points in his brief are models of clarity or compliance with Rule 84.04, but more importantly, they have no merit and are all denied.
The first point asserts that the jury's verdict in Plaintiffs' favor on their claims against Tim Williams for conversion was against the weight of the evidence and the court should have granted the motion for new trial. A trial court's denial of a motion for new trial on grounds that the verdict was against the weight of the evidence is a "conclusive determination that cannot be overturned on appeal." Meyer v. Purcell, 405 S.W.3d 572, 582 (Mo. App. E.D. 2013). "If a trial court refuses to grant a new trial on the ground that the verdict is against the weight of the evidence, appellate courts will not pass on the weight of the evidence." Id. Absent an argument that the jury's verdict "completely lacks supporting probative facts," we will not interfere with it. Travelers Commercial Casualty Company v. Vac-It-All Services, Inc. , 451 S.W.3d 301, 310 (Mo. App. E.D. 2014). Ignoring this standard of review, Tim Williams spends the entirety of this argument re-weighing the evidence and arguing for a different result. He contends the summary spreadsheet on which Plaintiffs relied to show all the cars Aughenbaugh claimed to have purchased with his own money was an unsupported exhibit and asks us to disregard it. He points to the conflicting testimony about the parties' agreements and their contradictory testimony about ownership of the cars and asks us to conclude Plaintiffs did not own the cars and therefore have no basis to recover for conversion of those cars. We are precluded from re-weighing the evidence in this way, deciding which witnesses to find credible and what evidence was most persuasive.
The second point on appeal is a challenge to the trial court's ruling on the admissibility of the summary spreadsheet exhibit. "[T]rial courts enjoy considerable discretion in the admission or exclusion of evidence, and we will only reverse a decision of the trial court upon a finding of an abuse of discretion." Foreman v. AO Smith Corporation , 477 S.W.3d 649, 655 (Mo. App. E.D. 2015). Tim Williams has wholly failed to demonstrate any abuse of the trial court's broad discretion in admitting this exhibit. His argument that the spreadsheet did not meet the prerequisites for admission of a summary exhibit under the Federal Rules of Evidence is obviously misplaced as that Federal Rule does not govern here. See Huffy Corporation v. Custom Warehouse, Inc. , 169 S.W.3d 89, 93 n.4 (Mo. App. E.D. 2005). His only other argument is that the spreadsheet was not admissible under Section 490.680, which requires, among other things, that the business record sought to be admitted *529 "was made in the regular course of business, at or near the time of the act, condition or event." Without citation to the record, he claims this spreadsheet was prepared after the lawsuit was filed. But, as Plaintiffs point out in response, Aughenbaugh testified explicitly that he recorded the information on the spreadsheet at the time of each transaction listed thereon.
The third point on appeal asserts:
The court's disproportionate allocation of trial time was in favor of the plaintiffs and was prejudicial to the defendant when the court repeatedly throughout the trial assured the jury that the trial would conclude in five days. Plaintiffs' evidence took four days and defendants' [sic] were left with one day to present their evidence with the result that defendants' [sic] had to cancel witnesses and cram their evidence into one day rather than incur the possible anger of the jury which was created by the statements of the trial judge.
None of the factual assertions lodged in this point and corresponding argument are supported with citations to the record. But even assuming that the court did place this time limitation on the parties, that is a matter within the trial court's discretion. See Young v. Pitts , 335 S.W.3d 47, 60 (Mo. App. W.D. 2011). Moreover, in this situation, "an offer of proof must be made, either before the close of evidence or, if time does not permit, in a post-hearing written motion, stating what evidence would have been produced had additional time been allowed and how the party seeking to introduce that evidence was prejudiced by its being excluded." Id. Tim Williams has again wholly failed to demonstrate an abuse of the trial court's discretion. Nor has he indicated what evidence he would have presented if he had more time or the prejudicial effect of its exclusion.
The judgments against Tim Williams must be affirmed.
Conclusion
Points I through III of Tim Williams's appeal are denied. Point I of Plaintiffs' cross-appeal is granted, Point II of the cross-appeal is denied as moot, and Points III through V of the cross-appeal are denied.
The order granting a new trial on Plaintiffs' claims for conversion against Mary Williams is REVERSED. The judgment entered on the jury's verdict, the directed-verdicts and the court-tried claims is AFFIRMED.
Philip M. Hess, P.J. and Mary K. Hoff, J., concur.

Where necessary for clarity, we will sometimes use the Williamses' first names. No disrespect is intended.

At all relevant times, "Budget Motors" was merely an unregistered fictitious name, not a legal entity of any kind. At the time of the lawsuit, it had become "Budget Motors, LLC." The LLC was named as a defendant in the petition and it filed counterclaims, but all such claims were directed out or dismissed and are not part of this appeal.

There was also a fraudulent transfer count submitted to the jury against Tim Williams. The jury returned a verdict in Tim Williams's favor on that count, and it is not at issue on appeal.

Mary Williams contends that this result elevates form over substance, citing to wholly irrelevant case law regarding when a motion can be deemed a request for new trial notwithstanding its nomenclature. The court's order is not unauthorized because the motion was misnamed, but because the motion did not contain the substantive ground on which the court relied.

The order for new trial ostensibly "erased" that judgment against Mary Williams. Clark v. Ameristar Casino St. Charles, Inc. , 133 S.W.3d 559, 560 (Mo. App. E.D. 2004). Had we not found that the order for new trial is void, the judgment would not have been final for purposes of appeal because it would not have resolved all claims against all parties. See Ndegwa v. KSSO, LLC , 371 S.W.3d 798, 801 (Mo. banc 2012). But because we conclude the order is void, that judgment against Mary Williams was never erased or, if it was erased, we now reinstate it. As such, the judgment resolves all claims against all parties, and we proceed to the parties' appeal therefrom.

Plaintiffs also refer again to the alleged benefit that inured to Taylor upon Tim Williams's sale of the cars he took from Plaintiffs-the speculative theory that Tim could have used the proceeds of those sale to make payments to Taylor-which we have already rejected as unsupported by any reasonable inference from the evidence.