

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| MARK McCOSTLIN, AND KAREN McCOSTLIN, | ) | No. ED112532 |
| | ) | |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | Cause No. 19SL-CC03421 |
| | ) | |
| MONSANTO COMPANY, | ) | Honorable Brian H. May |
| | ) | |
| Respondent. | ) | Filed: June 24, 2025 |

## Introduction

Mark McCostlin ("Mr. McCostlin") and his wife, Karen McCostlin (collectively, "the McCostlins") appeal the trial court's grant of a directed verdict in favor of Monsanto Company ("Monsanto"). The McCostlins assert five points on appeal. Points I–III contend the trial court erred in granting a directed verdict in favor of Monsanto because: (1) the expert witnesses' testimony established a submissible case on causation, which is an issue for the jury; (2) the trial court interpreted the evidence in the light most favorable to Monsanto; and (3) the directed verdict was based on the trial court's credibility determinations which lie within the jury's province. In Point IV, the McCostlins argue the trial court erred in denying their motion to recall one of their expert witnesses because the directed verdict depended upon an interpretation of his testimony. Lastly, in Point V, the McCostlins argue the trial court erred in sustaining Monsanto's objection

during redirect examination of one of their expert witnesses when he attempted to give his opinion regarding Mr. McCostlin's exposure days to Monsanto's product.

As to Points I–III, this Court holds the trial court did not err in granting a directed verdict in favor of Monsanto because the McCostlins' causation expert failed to demonstrate a causal connection between Monsanto's products containing glyphosate ("Roundup") and Mr. McCostlin's non-Hodgkin's Lymphoma ("NHL"). Also, the record directly contradicts the McCostlins' contentions the trial court interpreted the evidence in the light most favorable to Monsanto or made any credibility findings regarding one of their expert witnesses. As to Point IV, the trial court did not err in denying the McCostlins' motion to recall their expert witness because the witness did not make misstatements that needed to be clarified. With respect to Point V, the attempted testimony of the expert witness was beyond the scope of redirect and the parties' stipulation. Thus, Monsanto's objection was properly sustained.

Accordingly, the trial court's judgment is affirmed.

**Factual and Procedural Background**

On April 5, 2023, the McCostlins filed an amended petition against Monsanto asserting claims for strict liability (design defect and failure to warn), negligence, misrepresentation, violating consumer statutes, and loss of consortium. In pertinent part, the amended petition alleged Mr. McCostlin's exposure to Roundup caused him to develop NHL.

Prior to trial, the McCostlins disclosed Dr. James Clark ("Dr. Clark"), a toxicologist, and Dr. Barry Boyd ("Dr. Boyd"), a clinical oncologist, as expert witnesses. Dr. Clark reviewed Mr. McCostlin's deposition and also interviewed him. Based on the information he gathered, Dr. Clark opined Mr. McCostlin's "exposure to glyphosate via inhalation was equivalent to between 13 and 33 days of spraying" measured in eight-hour days. Dr. Boyd, in forming his

2

opinion, relied on Dr. Clark's calculations. In his deposition, Dr. Boyd, opined it was "more than likely" that Mr. McCostlin's large B cell lymphoma, a subtype of NHL, "was caused by exposure to Roundup[.]"

Monsanto moved to exclude Dr. Clark and Dr. Boyd from testifying on the basis that their opinions were unscientific and unreliable. The trial court granted the motion in part, and denied it part. In pertinent part, the trial court concluded Dr. Clark was permitted to "testify that Mr. McCostlin's exposure to Roundup was above the threshold values in the dose-metric studies but not that such dosage causes cancer." The trial court also precluded Dr. Clark "from offering opinions regarding general or specific causation, which Plaintiffs have conceded…." As for Dr. Boyd, he was allowed to testify that Mr. McCostlin's "exposure to Roundup was above the threshold values in the dose-metric studies placing him at an increased risk of developing NHL." But, he was barred from testifying about various studies "for the unreliable proposition that exposure to Roundup on more than two days per year increases the risk of developing NHL." Monsanto also moved for summary judgment on the ground the McCostlins lacked admissible evidence of general or specific causation. The trial court found summary judgment was not warranted on this basis and that "[the McCostlins'] experts may testify subject to the limitations" stated above.

The matter proceeded to a jury trial in September of 2023. At trial, Mr. McCostlin testified he used Roundup outside his homes in Indiana, Ohio, Illinois, California, Colorado, and Florida from 1985 to 2014. Mr. McCostlin stated he used Roundup year-round when he lived in California and Florida, and once a week throughout June, July, and August in the other states. Further, he stated he typically sprayed Roundup for 15 to 30 minutes at a time and explained his routine "could be more walking around than actual spraying[.]" Mr. McCostlin also testified he did not use

3

Roundup when he lived in Texas and Kansas. In early 2017, Mr. McCostlin went to see a doctor for a sore throat that would not improve. He was subsequently diagnosed with NHL.

Following Mr. McCostlin's testimony, Monsanto filed another motion to exclude Dr. Clark and Dr. Boyd. Therein, Monsanto argued Mr. McCostlin's testimony materially differed from his deposition testimony, and both expert witnesses relied on Mr. McCostlin's deposition testimony detailing his Roundup usage, including where, when, and how long he used Roundup, in forming their respective opinions. The trial court held voir dire examinations of both experts outside the presence of the jury. After the voir dire hearing, the trial court denied Monsanto's motion to exclude Dr. Clark and took the matter of excluding Dr. Boyd under submission.

Both experts then testified before the jury. Dr. Clark explained his process of calculating Mr. McCostlin's exposure to Roundup and concluded Mr. McCostlin had 9.59 exposure days to Roundup. Dr. Boyd was asked his opinion on whether Roundup directly contributed to cause Mr. McCostlin's NHL based on Mr. McCostlin's 9.59 exposure days to Roundup. Dr. Boyd stated he believed "it contributed to his risk" of developing NHL.

At the close of the McCostlins' evidence, Monsanto moved for a directed verdict on the ground the McCostlins failed to make a submissible case on causation. Monsanto argued the McCostlins' "only specific causation expert, Dr. Boyd, testified to the jury only that Mr. McCostlin's Roundup use may have 'contributed to the *risk*' of [Mr.] McCostlin developing NHL." (emphasis in original). The McCostlins, subsequently, filed a motion to recall Dr. Boyd so he could clarify his opinion.

The trial court held hearings on both motions. Following the hearings, the McCostlins' motion to recall Dr. Boyd was denied. The trial court reasoned Dr. Boyd did not misspeak as he consistently testified about Mr. McCostlin's *risk* of developing NHL. The trial court then

considered the parties' arguments and written motions regarding Monsanto's motion for a directed verdict. The trial court found Dr. Boyd "no longer testified concerning causation but rather risk" after Dr. Clark recalculated Mr. McCostlin's exposure days to be 9.59. The trial court also noted the McCostlins conceded *risk* did not mean *causation*. The trial court granted Monsanto's motion for a directed verdict based on the insufficiency of expert evidence required to establish specific causation. The trial court denied Monsanto's motion to exclude Dr. Boyd's testimony as moot.

This appeal follows.[1]

## Discussion

Points I, II, and III

Points I–III assert the trial court erred in granting Monsanto's motion for directed verdict. In Point I, the McCostlins assert the trial court erred because Dr. Boyd and Dr. Clark's testimony established a submissible case on causation, and causation is an issue for the jury. In Point II, the McCostlins contend the trial court erred because it interpreted the evidence in the light most favorable to Monsanto, which is in direct violation of the requirement that the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the McCostlins. In Point III, the McCostlins assert the trial court erred in entering a directed verdict because its ruling was based on credibility determinations and those determinations lie within the jury's sole province. For ease of analysis, we discuss these three points together.

*Standard of Review*

Directing a verdict is a drastic measure, and there is a presumption in favor of reversing the grant of a motion for directed-verdict. *Aughenbaugh v. Williams*, 569 S.W.3d 514, 523 (Mo. App. E.D. 2018). This Court reviews the trial court's grant of a directed verdict *de novo*. *Pinnell*

---

[1] Additional facts relevant to this appeal will be set forth as necessary in the discussion section below.

5

*v. City of Union*, 579 S.W.3d 261, 264 (Mo. App. E.D. 2019). Our review is limited to determining whether the plaintiff made a submissible case. *Aughenbaugh*, 569 S.W.3d at 523. In making our determination, "we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiffs and disregard all contrary evidence and inferences." *Id*. But, this Court does "not supply missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences." *Id*. (citation omitted).

"A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence." *Johnson v. City of St. Louis*, 613 S.W.3d 435, 445 (Mo. App. E.D. 2020) (quoting *Ellison v. Fry*, 437 S.W.3d 762, 768 (Mo. banc 2014)). Accordingly, this Court will "affirm a trial court's grant of a directed verdict if at least one element of the plaintiff's case was not supported by the evidence." *Id*.

*Analysis*

A. *Dr. Boyd's testimony failed to established causation*[2]

In the underlying matter, the McCostlins pursued strict liability and negligence theories. Under both theories the McCostlins were "required to show a causal connection between the defendant's conduct and the plaintiff's injury." *Poage v. Crane Co.*, 523 S.W.3d 496, 508 (Mo. App. E.D. 2017). There is no dispute that to establish causation, the McCostlins needed to establish both general and specific causation in order to make a submissible case. "'Specific causation' and 'general causation' are terms that have largely developed in toxic tort cases." *Huett v. Branson*, 675 S.W.3d 514, 521 n.3 (Mo. App. E.D. 2023). "General causation refers to whether an injury can be caused by a certain process[.]" *Id*. On the other hand, "[s]pecific causation refers to whether

---

[2] The McCostlins point relied on also asserts that Dr. Clark's testimony established a submissible case on causation. However, no argument was developed related to Dr. Clark's testimony. "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Luft v. Schoenhoff*, 935 S.W.2d 685, 687 (Mo. App. E.D. 1996).

6

the particular plaintiff's injury was caused by that process[.]" *Id*. An action regarding liability for exposure to a toxic substance typically requires a certain degree of scientific expertise and the causal relationship must be established by expert testimony. *See Brown for Est. of Kruse v. Seven Trails Invs., LLC*, 456 S.W.3d 864, 869–70 (Mo. App. E.D. 2014); *Harashe v. Flintkote Co.*, 848 S.W.2d 506, 509 (Mo. App. E.D. 1993).

The McCostlins cite to several Missouri cases for the proposition that the issue of causation lies within the province of the jury. We disagree with the McCostlins' oversimplification of the cited caselaw. It is true that "[i]f reasonable minds can draw different conclusions from the facts, causation questions are for the jury, and a directed verdict is not proper." *Nadolski v. Ahmed*, 142 S.W.3d 755, 761 (Mo. App. W.D. 2004) (citation omitted). However, simply because a defendant puts the issue of causation in dispute in a motion for directed verdict does not mean the issue of causation *must* automatically be placed before the jury. A plaintiff still bears the burden of making a submissible case, and the trial court's grant of a directed verdict is proper if *any* element, including causation, is not supported by the evidence. *See Johnson*, 613 S.W.3d at 445.

In the present case, the issue of causation did not arise out of a "battle of the experts" or testimony which would lead reasonable minds to draw different conclusions regarding causation, but rather from the contention there was *a lack* of expert testimony to establish specific causation. Specifically, Dr. Boyd, the McCostlins' sole specific-causation expert, failed to opine Mr. McCostlin's Roundup exposure caused, or contributed to cause, his NHL. Dr. Boyd, at his deposition, testified Mr. McCostlin's NHL "was caused by exposure to Roundup[.]" However, at trial, he modified his testimony following Dr. Clark's recalculation of Mr. McCostlin's exposure days. At trial, Dr. Boyd was questioned directly about causation, and when asked whether Roundup directly contributed to cause Mr. McCostlin's NHL, Dr. Boyd stated, "I believe that it

contributed to his *risk*." (emphasis added). Throughout his trial testimony, he affirmed that his "consistent opinion has been that [Roundup exposure] is a *possible risk factor*, *potential risk* factor for causation." (emphasis added). The McCostlins are correct that an expert witness need not say "magic words," but Dr. Boyd still needed to give an opinion as to whether a causal connection existed between Roundup and Mr. McCostlin's NHL. He failed to do so. His testimony asserting Mr. McCostlin's Roundup exposure is a "possible risk factor" is an assurance of a possibility that is not sufficient to establish causation. *See Linton by and through Linton v. Carter*, 634 S.W.3d 623, 629 (Mo. banc. 2021) ("[A] plaintiff bears the burden of proving causation, '[a]ssurance of possibility is not of itself … sufficient to make a submissible case.'" (citation omitted)). Dr. Boyd's testimony was uncontradicted and, as such, the McCostlins are bound by his testimony. *See Simpson v. Johnson's Amoco Food Shop, Inc.*, 36 S.W.3d 775, 777 (Mo. App. E.D. 2001) ("A party is bound by the uncontradicted testimony of that party's own witnesses[.]")

Furthermore, the McCostlins contend "Dr. Boyd was not required to render an opinion, based on a dose threshold derived from epidemiology studies, that a cause-and-effect relationship existed between Roundup exposure and Mr. McCostlin's lymphoma." Rather, the McCostlins argue, Dr. Boyd "was only required to opine that based on his observations and knowledge of the field, including his differential diagnosis of Mr. McCostlin, Roundup contributed to his development of the disease." The McCostlins' argument is contradicted by Dr. Boyd's own testimony. In fact, during cross-examination, Dr. Boyd testified that epidemiology studies are essential for his conclusions regarding causation:

> [Monsanto]: But what I want to know is, it's true, and you agree you cannot come to a conclusion about cancer causation based solely on mechanistic studies, correct?
>
> [Dr. Boyd]: Correct.

8

[Monsanto]: And you cannot come to a conclusion about cancer causation based solely on animal studies, correct?

[Dr. Boyd]: Correct.

[Monsanto]: And, in fact, even combining mechanistic and animal studies together, you agree you cannot come to a conclusion about cancer causation with just results from mechanistic and animal studies, right?

[Dr. Boyd]: Correct. Supported, but not confirmatory.

[Monsanto]: Exactly. So to get to the point where you can give a -- or come to a conclusion about why something causes cancer, you have to have epidemiology, right?

[Dr. Boyd]: Correct.

Lastly, the McCostlins assert the exposure-day figure falling below the 10-day exposure threshold did not negate the possibility that Mr. McCostlin's cancer was caused by his use of Roundup. In support, they highlight Dr. Boyd's testimony explaining the figure of 9.59 was a "marginal level below ten" that was "darn close to ten." However, this Court's complete reading of Dr. Boyd's testimony on direct and cross-examination established that he could not make a conclusion about cancer causation without epidemiology studies and those studies supported that a 10-day exposure threshold was necessary to demonstrate Roundup caused a person's cancer. The fact that the exposure days was "darn close" to the 10-day threshold is insufficient. This Court cannot supply missing evidence or give the McCostlins the benefit of speculative or forced inferences. *See Aughenbaugh*, 569 S.W.3d at 523.

Therefore, the record supports the McCostlins failed to present a submissible case on specific-causation because Dr. Boyd failed to give an opinion concluding Roundup caused or contributed to the cause of Mr. McCostlin's NHL.

9

*B. The trial court did not interpret the evidence in the light most favorable to Monsanto*

The McCostlins assert the trial court committed error by interpreting the evidence in the light most favorable to Monsanto which directly contradicts the standard for reviewing a motion for directed verdict. The McCostlins are correct that in determining whether they made a submissible case, the trial court views the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *See Aughenbaugh*, 569 S.W.3d at 523. However, nothing in the record or the trial court's judgment indicates the trial court interpreted the evidence in the light most favorable to Monsanto, as the McCostlins suggest.

Nevertheless, the McCostlins maintain "[t]he directed verdict is based on the finding that Dr. Boyd 'no longer testified' in support of specific causation." Specifically, they argue "Dr. Boyd repeatedly testified that the changed Dr. Clark number of 9.59 8-hr/day exposure days did nothing to alter his conclusion" and cite to several transcript pages to support this conclusion. But, Dr. Boyd did not draw that conclusion. Instead, as mentioned above, Dr. Boyd, at trial, testified: "[m]y consistent opinion has been that [Roundup exposure] is a possible risk factor, potential risk factor for causation." The McCostlins contend Dr. Boyd's trial testimony about "risk" is tantamount to an opinion that Mr. McCostlin's Roundup exposure *caused* his NHL. Interpreting Dr. Boyd's testimony in the manner suggested by the McCostlins would require this Court to not only supply missing evidence, but also draw forced and speculative inferences. This we cannot do. *See id.*

Additionally, the McCostlins argue "[v]iewing this evidence and all reasonable inferences in the light most favorable to the McCostlins', as required, it is impossible to conclude that Dr. Boyd 'no longer testified concerning causation[.]'" In support, the McCostlins point to the following question asked to Dr. Boyd at trial: "….do you **have an opinion** as to whether

10

glyphosate-based Roundup directly contributed to cause Mr. McCostlin's non-Hodgkin's lymphoma?" (emphasis added). Dr. Boyd's response was, "Yes, I do." There is a distinct difference between asking an expert witness if they *have an opinion* on a particular topic and asking them to *state their opinion*. Here, the McCoslins' line of questioning only confirmed Dr. Boyd had an opinion on causation and did not extend further to inquire whether he opined Roundup, in fact, caused Mr. McCostlin's NHL. Dr. Boyd's response establishing he had an opinion on causation without more is not sufficient to establish specific causation.

Therefore, this Court finds the record does not support the McCostlins' claim of error.

C. *The trial court did not make any credibility findings*

Lastly, the McCostlins argue the trial court erred in entering the directed verdict because its ruling was based on credibility determinations and those determinations lie within the sole province of the jury. To support their argument, the McCostlins point to the following findings in the trial court's judgment directing a verdict in favor of Monsanto: "[A]fter the calculations concerning Mr. McCostlin's 'exposure days' [were] reduced, Dr. Boyd no longer testified concerning causation but rather risk[;]" and "Plaintiffs' expert never gave an opinion on specific causation that Roundup caused Mr. McCostlin's NHL." The McCostlins assert these two statements constitute credibility findings and conclude: "Dr. Boyd's trial testimony does not support the [trial court's] impermissible credibility determination that he altered his ultimate conclusion that Roundup was a contributing cause of Mr. McCostlin's cancer."

The McCostlins' argument fails because they misinterpret the trial court's findings. The trial court's judgment did not implicitly or expressly make findings regarding Dr. Boyd's credibility. Rather, the trial court accurately detailed how, following Dr. Clark's reassessment of Mr. McCostlin's Roundup exposure days, Dr. Boyd consistently testified Roundup contributed to

Mr. McCostlin's *risk* of developing NHL. And, detrimental to the McCostlins' case, Dr. Boyd never gave an opinion to establish *specific causation* at trial. The findings made by the trial court are an accurate summary and conclusion of Dr. Boyd's testimony.

The McCostlins' argument is also deficient as it fails to develop a claim of error. "A trial court's judgment is presumed correct, and an appellant bears the burden of proving his or her claims of error." *Gibson v. Rice*, 571 S.W.3d 232, 236 (Mo. App. S.D. 2019). In short, the McCostlins' argument is not developed and fails to "demonstrate how the principles of law and the facts of this case interact to support a claim for reversible error." *See Parkside Fin. Bank & Tr. v. Allen*, 688 S.W.3d 83, 89 (Mo. App. E.D. 2024) (citation omitted). The McCostlins' recitation of Dr. Boyd's testimony without any legal analysis to support the conclusion that they are entitled to reversal is insufficient to satisfy their burden on appeal. "A submission of error, being without reasoned argument does not require, or even allow, a decision." *Firestone v. VanHolt*, 186 S.W.3d 319, 324 (Mo. App. W.D. 2005). Therefore, the McCostlins' argument must fail.

Points I–III are denied.

## Point IV

In Point IV, the McCostlins argue the trial court abused its discretion in denying them the opportunity to recall Dr. Boyd. Specifically, the McCostlins argue Dr. Boyd misspoke in using the word *risk* rather than *causes*, and he could have easily cleared up his conclusions if he was recalled. This Court holds the trial court did not abuse its discretion in denying the McCostlins' motion to recall Dr. Boyd as the record supports Dr. Boyd did not misspeak and consistently testified Mr. McCostlin's use of Roundup contributed to his *risk* of developing NHL.

## Standard of Review

A trial court has "discretion to allow or disallow the recall of a witness and, without a clear abuse of discretion, its action will not be grounds for reversal." *Hurley v. Burton*, 626 S.W.3d 810, 827 (Mo. App. E.D. 2021). A trial court abuses its discretion when its "ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* at 816 (internal quotations and citation omitted).

## Analysis

The McCostlins sought to recall Dr. Boyd for the sole purpose of clarifying whether he opined that Mr. McCostlin's exposure to Roundup directly caused his NHL. Specifically, the McCostlins point this Court to *State v. Couch* for the proposition "the law encourages the correction of erroneous statements[.]" 567 S.W.2d 360, 362 (Mo. App. 1978). They further cite to *State v. Byrd*, 676 S.W.2d 494, 504 (Mo. banc 1984) to support the argument that "recalling a witness has even been allowed so that they can recant testimony claimed to be perjury." While the McCostlins correctly assert a trial court may allow a witness to be recalled to correct an erroneous statement, our review of the record reveals Dr. Boyd did not unintentionally misspeak, as the McCostlins assert, nor was there was any allegation or finding that Dr. Boyd gave false testimony. As discussed in Point I, the record clearly demonstrates Dr. Boyd consistently spoke in terms of **risk** as opposed to **causation**. Dr. Boyd's statements were not misstatements that needed correction; they were his ultimate opinion following Dr. Clark's reassessment of exposure days, which was triggered by the clarifications made by Mr. McCostlin at trial.

Given the foregoing, the McCostlins have failed to show the trial court abused its discretion denying their motion to recall Dr. Boyd.

Point IV is denied.

Point V

In Point V, the McCostlins argue the trial court erred in sustaining Monsanto's objection during Dr. Clark's testimony when he attempted to explain the math behind his calculation of Mr. McCostlin's 9.59 exposure days to Roundup. This Court holds the trial court did not abuse its discretion is sustaining Monsanto's objection because Dr. Clark's testimony was outside the scope of redirect and what the McCostlins agreed upon. Thus, Monsanto's objection was properly sustained.

A trial court's ruling on the scope of redirect examination is reviewed for an abuse of discretion. *State ex rel. Missouri Highway & Transp. Comm'n v. Toyota*, 846 S.W.2d 785, 786 (Mo. App. E.D. 1993).

During the voir dire examination, Dr. Clark explained he needed to recalculate Mr. McCostlin's exposure days due to Mr. McCostlin's testimony at trial. The McCostlins stipulated that "the minimum dose amount" Dr. Clark recalculated would be "'the' dose amount that would be presented to the jury." After discussion and arguments, Dr. Clark created an updated chart which read, "[t]he information compiled above in **Table 5** reveals that Mr. McCostlin had **9.59** exposure days [76.75 hrs. ÷ 8 hrs./day]." (emphasis in original).

When he was called to the testify before the jury, Dr. Clark explained his method to calculate Mr. McCostlin's exposure days and stated his final conclusion was that Mr. McCostlin had 9.59 exposure days. On redirect examination, the following exchange took place:

[The McCostlins]: And just to be clear, we talked about the rightmost column, though. That's exposure hours, correct?

[Dr. Clark]: Yes.

14

[The McCostlins]: Okay. And then to get that number, just so I'm clear, what you had to do was multiply out the other inputs. And what did you do after you multiplied that out to end up with the exposure hours column?

[Dr. Clark]: So, as I described, Mr. McCostlin's exposure is going to be the number of years at a location, multiplied by the amount of time and the events per year. Then I took a 50 percent reduction on that to account for variability. And that's how I came out with it. If I did not take that 50 percent reduction, that the value I would have would be in excess of 100 and --

[Monsanto]: Your Honor, I object. I object. It's outside the scope of his disclosed opinions on this chart.

[The trial court]: And the narrative response. So that will be sustained. Restate -- or go to your next question, please.

[The McCostlins]: Next question is fine, Your Honor. Thank you.

On appeal, the McCostlins maintain the "actual exposure hours were 153.5, or 19.19 exposure days" and argue it was reversible error to prevent Dr. Clark from placing the 9.59 exposure day calculation in its proper context and explaining the "simple math" to conclude that 9.59 was the "bottom value" and 19.19 exposure days was the actual calculation of exposure days. However, unlike his previous charts, Dr. Clark's revised chart makes no reference to a *minimum* exposure amount, nor does it include a calculation of 19.19 as the actual exposure hours. It simply reads, "Mr. McCostlin had **9.59** exposure days…." (emphasis in original). Fatal to the McCostlins' argument is the fact they agreed to only use the exposure days figure Dr. Clark recalculated as reflected in Table 5. This Court cannot charge the trial court with reversible error for sustaining Monsanto's objection to the McCostlins' attempt to elicit testimony of Dr. Clark's calculation of exposure days outside the amount the McCostlins stipulated to use at trial. *See Taneycomo Lakefront Resort & RV Park, LLC v. Empire Dist. Elec. Co.,* 686 S.W.3d 660, 662 n.1 (Mo. App. S.D. 2024) (stating stipulations are controlling and conclusive, and courts are required to enforce them).

Aside from Dr. Clark's testimony going beyond the scope of the parties' stipulation, the testimony went beyond the scope of redirect. The function of redirect examination is to "afford the witness opportunity to make full explanation of the matters made the subject of cross-examination so as to rebut the discrediting effect of his testimony on cross-examination and correct any wrong impression which may have been created." *Toyota*, 846 S.W.2d at 787 (citation omitted). The record demonstrates Dr. Clark, on direct examination, testified as to his methodology in computing the "math" and reaching Mr. McCostlin's actual exposure days of 9.59.[3] On redirect, Dr. Clark's testimony did not attempt to give a full explanation of subjects raised on cross-examination or cure any wrong impression. Rather, Dr. Clark's testimony attempted to provide a computation beyond his calculations reflected in Table 5 to arrive at the conclusion that 9.59 exposure days was the "bottom value" and the actual figure the jury should consider is 19.19 exposure days. Accordingly, the trial court did not abuse its discretion in sustaining Monsanto's objection.

Point V is denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Michael S. Wright, Judge

John P. Torbitzky, P.J. and
Robert M. Clayton III, J. concur.

---

[3] Specifically, on direct examination, Dr. Clark was asked the following questions:
> [The McCostlins]: Okay. And, again, your final conclusion here was exposure hours of 76.75 for Mr. McCostlin, and exposure days of 9.59, correct?
> [Dr. Clark]: Yes, ma'am.
> [The McCostlins]: Okay. And that resulted after the 50 percent reduction that you took from your initial multiplication, correct?
> [Dr. Clark]: Correct.

16